08 C 522

JUDGE GOTTSCHALL
MAGISTRATE JUDGE COX

# Exhibit 1, Part 1

Firm ID # 32893

## CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| TIG Insurance Company | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 0 7 C H    3 8 6 2  5 |
| | ) | |
| Global Reinsurance Corporation of America | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND MONEY DAMAGES

Now comes the plaintiff, TIG Insurance Company ("TIG"), by and through its attorneys, LOVELLS LLP, and for its Complaint against defendant Global Reinsurance Corporation of America ("Global") as successor-in-interest to Constitution Reinsurance Corporation ("Constitution Re"), alleges as follows:

1.    This case concerns defendant Global's failure to honor numerous reinsurance agreements that its predecessors issued to TIG (the "Reinsurance Agreements"). Those Reinsurance Agreements contain contractual provisions requiring Global to indemnify TIG for a portion of the "expenses" that TIG incurs in connection with claims under policies issued by TIG. Global has violated those coverage obligations. TIG has incurred millions of dollars in litigation expenses in connection with efforts by TIG's policyholder to obtain insurance coverage from TIG. Although Global is properly responsible to cover over $1,340,000 of those past "expenses," as well as such expenses incurred in the future, Global refuses to reimburse TIG for any such expenses. Accordingly, TIG brings this action to obtain a declaration regarding Global's coverage obligations and to recover the sums owed to TIG pursuant to the Reinsurance Agreements.

## THE PARTIES

2.    Plaintiff TIG is a California corporation with its principal place of business in New Hampshire. TIG is the legal successor-in-interest of certain of the liabilities of several other insurance companies, including International Insurance Company ("IIC), International Surplus Lines Insurance Company ("ISLIC"), and The North River Insurance Company ("North River") (collectively referred to as "TIG"). IIC, ISLIC and North River were the original parties that entered into the Reinsurance Agreements.

3.    Defendant Global is a reinsurance company domiciled in New York and with its principal place of business in New York City. Global was voluntarily placed into runoff on August 2, 2002 and no longer underwrites or issues new insurance or reinsurance agreements. Global is the legal successor-in-interest to the rights and obligations under the Reinsurance Agreements, which were originally issued by Constitution Re.

## JURISDICTION AND VENUE

4.    The court has jurisdiction over this matter pursuant to 735 ILCS §5/2-209. Among other reasons, IIC and ISLIC were domiciled in Illinois throughout much of the period relevant to this Complaint, including at the time the Reinsurance Agreements were issued. Their headquarters and underwriting operations were in Cook County. The North River contracts at issue in this case were assumed in 1993 by IIC, an Illinois company. Global transacts business within Illinois and it has issued reinsurance contracts and coverage to the Illinois companies involved in this case. Further, the performance of the Reinsurance Agreements has been substantially connected with the State of Illinois over the course of many years.

5.    Venue is proper in this court pursuant to 735 ILCS §5/2-101 in that several transactions or critical portions of the transactions from which this cause of action arise occurred in Cook County, Illinois.

2

## FACTUAL ALLEGATIONS

6.     This Complaint concerns insurance and reinsurance obligations assumed in the 1970s and 1980s.  Throughout that period, TIG (through its predecessors) was engaged in the business of providing various commercial property and casualty insurance coverages to corporations and commercial entities.  TIG typically provided excess coverage, i.e., excess of underlying insurance or a self-insured retention of the policyholder.

7.     As is typical in the insurance industry, for various reasons, TIG decided to purchase reinsurance protection to cover a portion of the insurance liabilities that TIG had assumed under the policies it had issued.

8.     Reinsurance is an insurance contract issued to an insurer.  The insurer purchasing the reinsurance is known as the "ceding insurer" or "cedent." TIG is thus the "ceding company" in this instance.  A reinsurance contract provides a right of reimbursement when the cedent incurs losses or expenses by making payments or by participating in proceedings to resolve claims under insurance policies it has issued to others.  The typical reinsurance agreement requires the cedent to pay its reinsurer a portion of the premiums collected from the insurance policies covered by the reinsurance agreement; in turn, the reinsurer is obligated to indemnify the ceding company for its agreed share of the claims and expenses incurred by the ceding company in connection with its policies.

9.     From 1974 through 1985, TIG purchased reinsurance protection from Global on numerous occasions.  A list of the relevant Reinsurance Agreements, including dates of coverage, limits of liability, and the identity of the underlying policyholders, is set forth as Exhibit A, which is incorporated herein by reference.  In addition, a copy of each such Reinsurance Agreement in TIG's possession is incorporated and attached hereto as Exhibits B through Y.

3

10.    Although many of the Reinsurance Agreements contain slightly different terms and conditions, at their core, all of them provide that Global was entitled to receive a share of the premiums that TIG received from its policyholders under reinsured policies.   In turn, the Reinsurance Agreements all obligate Global to indemnify TIG for its specified share of claims and expenses incurred by TIG pursuant to the reinsured policies.

11.    There is no dispute in this case regarding premium.   In fulfillment of its contractual obligations, TIG has paid to Global all of the premiums properly due and owing to Global under the Reinsurance Agreements.  Global has accepted and retained those premiums for its benefit.

12.    In contrast, Global has failed to honor its contractual obligation to reimburse TIG for "expenses" it has incurred in connection with the reinsured policies issued by TIG.

13.    Each of the Reinsurance Agreements contains substantially the following language regarding Global's obligation to cover a portion of TIG's expenses :

> "All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer.  Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. *In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payment to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss paymen*t. *If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declaration in the first layer of participation."*

Constitution Re Certificate of Reinsurance, Certificate No. 64677; Section E (emphasis added). With regard to the last sentence of the provision quoted above, all of the Reinsurance Agreements are known as "contributing excess" agreements.

14.    Over the years, TIG's policyholders have asserted various claims for coverage under the reinsured policies.  Pursuant to its duties to its policyholders, after receiving notice of

4

claims, TIG has performed an investigation of each claim to determine whether and in what amount it should be paid. Where TIG has determined that claims are covered, they have been paid, and the losses and expenses incurred by TIG have been ceded to Global.

15.    On certain occasions, however, TIG's policyholders have refused to accept decisions by TIG that their claims (or portions thereof) were outside the scope or limits of coverage afforded by TIG's policies. Accordingly, TIG's policyholders initiated declaratory judgment actions, seeking a declaration that TIG was obligated to provide the requested coverage. Accordingly, TIG was forced to incur expenses investigating, defending, and responding to those coverage claims. On other occasions, TIG sought to obtain an affirmative declaration that losses at issue were not covered.

16.    TIG's actions in investigating, defending, and prosecuting these coverage determinations inured to the mutual benefit of TIG and Global. To the extent that TIG was successful in establishing that its policyholders' claims were improper, inflated, or outside the scope or limits of coverage, such a result reduced the amount of loss that Global was obligated to pay. TIG's actions also were necessary and proper to ensure that only covered losses were paid under its policies, a course of action that benefited Global as TIG's reinsurer.

17.    The expenses TIG incurred in connection with its policyholder's claims for coverage are expenses covered by the plain language of the Reinsurance Agreements. Accordingly, Global is obligated to indemnify TIG for its specified percentage of those expenses.

18.    After incurring expenses in connection with its policyholder's assertions of coverage, TIG has submitted requests to Global for reimbursement. Pursuant to the terms of the Reinsurance Agreement, TIG consistently invoiced Global for its proportionate share of those expenses as they were incurred, the remainder of which were borne by TIG. Global has refused to pay any such expenses.

19.    TIG has incurred declaratory judgment coverage action expenses in connection with (among others) five major policyholders: Beecham, Inc., Combustion Engineering, Inc., the Warner Lambert Company, Rockwell International, and Shell Oil Company. TIG has submitted requests to Global for reimbursement totaling $1,340,564 in connection with TIG's expenses incurred in coverage actions with those five policyholders. A breakdown of the specific amounts billed by TIG to Global on each of those policyholder accounts is as follows:

| | | |
|---|---|---:|
| Beecham, Inc. | $ | 84,750.60 |
| Combustion Engineering | $ | 200,968.22 |
| Warner Lambert | $ | 899,864.99 |
| Rockwell International | $ | 94,069.26 |
| Shell Oil | $ | 60,911.33 |
| TOTAL | $ | 1,340,564.40 |

20.    TIG has made repeated efforts to obtain Global's compliance with its contractual obligations. After years of discussions and negotiations regarding the issue, on November 26, 2007, TIG sent a final demand for payment. In that letter, TIG notified Global that it would initiate legal proceedings against Global if Global did not accept its obligations and indemnify TIG by December 21, 2007. Despite that demand, Global has continued to deny its obligations.

## COUNT I

## DECLARATORY JUDGMENT

21.    TIG hereby re-alleges Paragraphs 1 through 20 as though fully set forth herein.

22.    TIG has fully performed its obligations under the Reinsurance Agreements.

23.    Despite repeated demands, Global has failed to honor its obligation to reimburse TIG for its expenses incurred in coverage actions with TIG's policyholders. Further, Global refuses to cover such expenses incurred by TIG in the future.

24.    Each Reinsurance Agreement constitutes a separate "contract or other written instrument" that is the subject of an actual controversy between TIG and Global. Pursuant to 735 ILCS 5/2-701, TIG is entitled to a declaration establishing its rights and Global's obligations under the Reinsurance Agreements.

6

WHEREFORE, plaintiff TIG respectfully requests the following relief:

(A) A declaration that the provisions in the Reinsurance Agreements between TIG and Global regarding Global's obligations to indemnify TIG for its proportionate share of "expenses" includes coverage for expenses incurred by TIG in connection with declaratory judgment or coverage actions between TIG and its policyholders;

(B) Costs pursuant to 735 ILCS 5/2-701(e); and

(C) Such other and further relief as may be just and proper.

## COUNT II

## BREACH OF CONTRACT

25.    Plaintiff TIG hereby re-alleges paragraphs 1 through 24 as though fully set forth herein.

26.    TIG has fully performed its obligations under the Reinsurance Agreements.

27.    Despite repeated demands, Global has failed to pay TIG the amounts properly due and owing under the Reinsurance Agreements.

28.    Global's failure to pay TIG the amounts owed constitutes a material breach of the Reinsurance Agreements with TIG.

29.    As a result of Global's material breach of its reinsurance agreements, TIG has suffered financial damages in an amount no less than $1,340,564.

WHEREFORE, plaintiff, TIG respectfully requests the following relief:

(A)    A finding that Global has breached its Reinsurance Agreements with TIG;

(B)    Entry of a judgment in favor of TIG;

(C)    An award of contract damages against Global in an amount no less than $1,340,564;

(D)    Pre-judgment interest;

(E)    TIG's costs; and

7

(F)    Such other and further relief that this Court deems just and proper.

Respectfully submitted,

TIG INSURANCE COMPANY

One of its Attorneys

Eric A. Haab
Robin C. Dusek
LOVELLS LLP
330 North Wabash, Suite 1900
Chicago IL 60611
(312) 832-4400
(312) 832-4444 (fax)
Firm No. 32893

# EXHIBIT A

| CERTIFICATE NUMBER | UNDERLYING POLICYHOLDER | REINSURANCE COVERAGE DATES | REINSURANCE LIMITS |
|---|---|---|---|
| 63353 | Beecham, Inc. | 4/1/76 - 4/1/77 | $200,000 each occurrence and in the aggregate where applicable part of $1,000,000 which is excess primary |
| 63354 | Beecham, Inc. | 4/1/76 - 4/1/77 | $800,000 each occurrence and in the aggregate where applicable part of $4,000,000 which is excess of $1,000,000 which in turn is excess of primary |
| 64677 | Beecham, Inc. | 4/1/77 - 4/1/78 | $1,000,000 each occurrence and in the aggregate where applicable part of $4,000,000 which is excess of primary |
| 65746 | Beecham, Inc. | 4/1/78 - 4/1/79 | $1,000,000 each occurrence and in the aggregate where applicable part of $4,000,000 which is excess of primary |
| 64693 | Combustion Engineering, Inc. | 1/1/77 - 1/1/78 | $500,000 part of the limits shown in Item # 2 of agreement |
| 65813 | Combustion Engineering, Inc. | 1/1/78 - 1/1/79 | $500,000 each occurrence and in the aggregate where applicable part of $2,000,000 part of $5,000,000 which is in excess of $22,000,000 which in turn is excess of underlying insurance |
| 66488 | Combustion Engineering, Inc. | 1/1/79 - 1/1/80 | $500,000 each occurrence and in the aggregate where applicable part of $2,000,000 part of $5,000,000 which is in excess of $22,000,000 which in turn is excess of primary |
| 67607 | Combustion Engineering, Inc. | 1/1/80 - 1/1/81 | $500,000 each occurrence and in the aggregate where applicable part of $2,000,000 part of $5,000,000 which is in excess of $22,000,000 which in turn is excess of primary |
| 69185 | Combustion Engineering, Inc. | 1/1/81 - 1/1/82 | $500,000 each occurrence and in the aggregate where applicable part of $2,000,000 part of $5,000,000 which is in excess of $22,000,000 which in turn is excess of primary |
| 69967 | Combustion Engineering, Inc. | 1/1/82 - 1/1/83 | $500,000 each occurrence and in the aggregate where applicable part of $12,500,000 part of $25,000,000 which is in excess of $22,000,000 which in turn is in excess of primary |
| 70643 | Combustion Engineering, Inc. | 1/1/83 - 1/1/84 | $500,000 each occurrence and in the aggregate where applicable part of $12,500,000 part of $25,000,000 which is in excess of $22,000,000 which in turn is in excess of underlying insurance |

| CERTIFICATE NUMBER | UNDERLYING POLICYHOLDER | REINSURANCE COVERAGE DATES | REINSURANCE LIMITS |
|---|---|---|---|
| 68717 | Rockwell International Corp. | 10/1/80 - 10/1/81 | $2,000,000 each occurrence and in the aggregate where applicable part of $28,000,000 part of $40,000,000 which is excess of $60,000,000 which in turn is excess of primary |
| 78662 | Rockwell International Corp. | 10/1/82 - 10/1/83 | $3,000,000 each occurrence and in the aggregate where applicable part of $52,000,000 part of $115,000,000 which is in excess of $235,000,000 which in turn is in excess of underlying insurance |
| 71542 | Rockwell International Corp. | 10/1/83 - 10/1/84 | $2,000,000 each occurrence and in the aggregate where applicable part of $28,000,000 which in turn is part of $40,000,000 which is in excess of $60,000,000 which in turn is in excess of primary insurance |
| 61627 | Rockwell International Corp. | 4/1/74 - 4/1/75 | $2,000,000 each occurrence and in the aggregate where applicable part of $25,000,000 part of $40,000,000 which is excess of $60,000,000 |
| 63248 | Rockwell International Corp. | 4/1/76 - 4/1/77 | $2,000,000 each occurrence and in the aggregate where applicable part of $20,000,000 part of $40,000,000 which is excess of $60,000,000 |
| 64633 | Rockwell International Corp. | 4/1/77 - 4/1/78 | $2,000,000 each occurrence and in the aggregate where applicable part of $22,500,000 part of $40,000,000 which is excess of $60,000,000 which in turn is excess of primary |
| 65680 | Rockwell International Corp. | 4/1/78 - 4/1/79 | $2,000,000 each occurrence and in the aggregate where applicable part of $18,000,000 part of $40,000,000 which is excess of $60,000,000 which in turn is excess of primary |
| 66799 | Rockwell International Corp. | 4/1/79 - 4/1/80 | $2,000,000 each occurrence and in the aggregate where applicable part of $18,000,000 part of $40,000,000 which is excess of $60,000,000 which in turn is excess of primary |
| 68015 | Rockwell International Corp. | 4/1/80 - 4/1/81 | |
| 66114 | Shell Oil Company | 8/22/78 - 7/1/79 | $1,000,000 each occurrence and in the aggregate where applicable part of $5,275,000 part of $50,000,000 which is excess of $105,000,000 which in turn is excess of underlying insurance |
| 61647 | Warner - Lambert Co. | 1/1/74 - 1/1/77 | $500,000 each occurrence and in the aggregate where applicable part of $1,500,000 part of $8,500,000 excess of $40,000,000 |

| CERTIFICATE NUMBER | UNDERLYING POLICYHOLDER | REINSURANCE COVERAGE DATES | REINSURANCE LIMITS |
|---|---|---|---|
| 62997 | Warner - Lambert Co. | 12/31/75 - 12/31/78 | $1,000,000 each occurrence and in the aggregate where applicable part of $2,000,000 part of $15,000,000 which is excess of $5,000,000 which in turn is excess of underlying insurance |
| 62998 | Warner - Lambert Co. | 12/31/75 - 12/31/78 | $1,000,000 each occurrence and in the aggregate where applicable part of $4,500,000 part of $5,000,000 which is excess of underlying insurance |

# EXHIBIT B

# CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS



63353
CERTIFICATE NUMBER

First Layer

### THE NORTH RIVER INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| BEECHAM INC., ETAL | DCL 00 1314 | | |
| CITY | STATE | | ZIP |
| CLIFTON | NEW JERSEY | | |
| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. | |
| 04/01/76   04/01/77 | 04/01/76 TO 04/01/77 | | |

REPLACES CERTIFICATE NO.

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$5,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
EXCESS OF PRIMARY

**ITEM 3 - COMPANY RETENTION**

$4,800,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$200,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $1,000,000 WHICH IS EXCESS OF PRIMARY

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS     ☒ CONTRIBUTING EXCESS     ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$4,371.00 NET.

**ITEM 7 - CANCELLATION NOTICE**

60 DAYS

CONSTITUTION REINSURANCE CORPORATION     BY _____

AUTHORIZED SIGNATURE

VICE PRESIDENT

FM 16.0.33 (8-75)

COMPANY COPY

## CONSTITUTION REINSURANCE CORPORATION
### CERTIFICATE OF REINSURANCE

**CONSTITUTION REINSURANCE CORPORATION**
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

**REINSURING AGREEMENTS AND CONDITIONS**

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

**A.**  The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declaration, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company will make available for inspection, and place at the disposal of the Reinsurer at reasonable times, all reports of the Company relating to this Certificate of Reinsurance and claims in connection therewith.

**B.**  In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

**C.**  The Company shall notify the Reinsurer promptly of any occurrence which in the Company's estimate of the value of injuries or damages sought, without regard to liability, might result in judgment in an amount sufficient to involve this Certificate of Reinsurance. The Company shall also notify the Reinsurer promptly of any occurrence in respect of which the Company has created a loss reserve equal to or greater than fifty (50) percent of the amount specified in Item 3 of the Declaration, or, if this reinsurance applies on a contributing excess basis, when notice of claim is received by the Company. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

**D.**  All loss settlements made by the Company, provided they are within the terms and conditions of the Company's policy(ies) and within the conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer upon receipt of a definitive statement of loss. The Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employees) incurred by the Company in the investigation and settlement of claims or suits and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**E.**  **Definitions**

As used in this Certificate the following terms shall have the meaning set opposite each.

**EXCESS OF LOSS**    The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

**CONTRIBUTING EXCESS**   The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage set forth in Item 4 of the Declarations.

**NON-CONCURRENT**    The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer under the policy(ies) reinsured, as stated in the policy applied only to the hazards or risks of loss or damage specifically described in the Declarations:

**F.**  The Reinsurer will be paid or credited by the Company with its proportion of any recovery from others. Any recovery from others, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the "excess of loss basis", salvage shall be applied in the inverse order in which liability attaches.

**G.**  The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**H.**  In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its liquidator, receiver or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**I.**  The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or ceding company.

**J.**  Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter such reinsurance afforded here by shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**K.**  The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York, but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_Secretary_                                            _President_
VICE PRESIDENT

# EXHIBIT C

## CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET ● NEW YORK, N.Y. 10038
CEDING COMPANY AND ADDRESS



63354
CERTIFICATE NUMBER
Second Layer

THE NORTH RIVER INSURANCE COMPANY

| NAME OF INSURED | | COMPANY POLICY NUMBER | | |
|---|---|---|---|---|
| BEECHAM INC., ETAL | | DCL 00 1314 | | |
| CITY | | STATE | | ZIP |
| CLIFTON | | NEW JERSEY | | |

| REINSURANCE POLICY PERIOD | | COMPANY POLICY PERIOD | | RENEWAL CERTIFICATE NO. |
|---|---|---|---|---|
| 04/01/76 | 04/01/77 | 04/01/76 TO 04/01/77 | | |

REPLACES CERTIFICATE NO.

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$5,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE EXCESS OF PRIMARY

**ITEM 3 - COMPANY RETENTION**

$4,200,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$800,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE PART OF $4,000,000 WHICH IS EXCESS OF $1,000,000
WHICH IN TURN IS EXCESS OF PRIMARY

**ITEM 5 - BASIS OF ACCEPTANCE**
☐ EXCESS OF LOSS     ☒ CONTRIBUTING EXCESS     ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$3,875.00 NET.

**ITEM 7 - CANCELLATION NOTICE**

60 DAYS

CONSTITUTION REINSURANCE CORPORATION      BY _____
AUTHORIZED SIGNATURE.

VICE PRESIDENT

Fel 16.0.83 (8-75)                    COMPANY COPY



# CONSTITUTION REINSURANCE CORPORATION
## CERTIFICATE OF REINSURANCE

**CONSTITUTION REINSURANCE CORPORATION**
110 WILLIAM STREET
NEW YORK, NEW YORK 10038

herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer as specified in Item 4 of the Declaration, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except where otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsement thereto and agree to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance, or claims in connection therewith.

**B.** In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

**C.** The Company shall notify the Reinsurer promptly of any occurrence which in the Company's estimate of the value of injuries or damages sought, without regard to liability, might result in judgment in an amount sufficient to involve this Certificate of Reinsurance. The Company shall also notify the Reinsurer promptly of any occurrence in respect of which the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention specified in Item 3 of the Declaration, or, if this reinsurance applies on a contributing excess basis, when notice of claim is received by the Company. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate such counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

**D.** All loss settlements made by the Company, provided they are within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay his proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and settlement of claims or suits and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**E. Definitions**

As used in this Certificate the following terms shall have the meaning set opposite each.

**EXCESS OF LOSS** The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted applies) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

**CONTRIBUTING EXCESS** The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage set forth in Item 4 of the Declarations.

**NON-CONCURRENT** The reinsurance provided does not apply to any hazards or risks of loss or damage covered by the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer, if applicable, set forth in Item 4 of the Declaration's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

**F.** The Reinsurer will be paid or credited by the Company with its proportion of salvage or subrogation recovered, after deducting all expenses incurred by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**G.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**H.** In the event of the insolvency of the Company, the reinsurance under this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of the insolvency of the Company. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense which it may deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**I.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or ceding company.

**J.** Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**K.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York, but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_Secretary_

_President_

# EXHIBIT D

# CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS



64677
CERTIFICATE NUMBER

THE NORTH RIVER INSURANCE COMPANY

APR 2 9 1977

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| BEECHAM, INC. | DCL 000193 | | |
| CITY | | STATE | ZIP |
| CLIFTON | | NEW JERSEY | |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| 04/01/77 | 04/01/78 | 04/01/77 TO 04/01/78 | |

REPLACES CERTIFICATE NO.

**ITEM 1 - TYPE OF INSURANCE**

UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$5,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
EXCESS OF PRIMARY

**ITEM 3 - COMPANY RETENTION**

$4,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$1,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $4,000,000 WHICH IS EXCESS OF PRIMARY

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS          ☒ CONTRIBUTING EXCESS          ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$42,625.00 NET.

**ITEM 7 - CANCELLATION NOTICE**

60 DAYS

CONSTITUTION REINSURANCE CORPORATION          BY _____

AUTHORIZED SIGNATURE

VICE PRESIDENT

FM 160.83 (1-77)

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A.    The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

B.    Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

C.    In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

D.    As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

E.    All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations, in addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

F.    Definitions

As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS  The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS - The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT  The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS  Shall consist of those parts or portions of the Company's investigative claim file which in the judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the proponsities of any loss reported hereunder.

G.    The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

H.    The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

I.    In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

J.    The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

K.    Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter, the reinsurance afforded hereby shall, terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

L.    The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary                                    _____ President

# EXHIBIT E

# CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET · NEW YORK, N.Y. 10038

**65746**
CERTIFICATE NUMBER

CEDING COMPANY AND ADDRESS

THE NORTH RIVER INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | |
|---|---|---|
| BEECHAM, INC., ET AL. | DCL 000199 | |
| CITY | STATE | ZIP |
| CLIFTON | NEW JERSEY | |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| 04-01-78 \| 04-01-79 | 04-01-78 TO 04-01-79 | |

**REPLACES CERTIFICATE NO.**

**ITEM 1 - TYPE OF INSURANCE**

UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$5,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
EXCESS OF PRIMARY

**ITEM 3 - COMPANY RETENTION**

$4,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$1,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $4,000,000 WHICH IS EXCESS OF PRIMARY

**ITEM 5 - BASIS OF ACCEPTANCE**

[ ] EXCESS OF LOSS   [X] CONTRIBUTING EXCESS   [ ] NON-CONCURRENT

**ITEM 6 - PREMIUM**

$55,282.50 NET

**ITEM 7 - CANCELLATION NOTICE**

60 DAYS

CONSTITUTION REINSURANCE CORPORATION

BY _Thomas G. Devine_
AUTHORIZED SIGNATURE
ASSISTANT SECRETARY

RM 16.0.63 (1-77)

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A. The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both-dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

B. Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

C. In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

D. As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

E. All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employees) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

F. Definitions
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS - The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS  The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT  The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS  Shall consist of those parts or portions of the Company's investigation claim file which in the judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the proportionalities of any loss reported hereunder.

G. The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

H. The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

I. In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured, hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

J. The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due, from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

K. Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

L. The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary                    _____ President

## NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY – REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

    I. It is agreed that the policy does not apply under any liability coverage, to {injury, sickness, disease, death or destruction / bodily injury or property damage} with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

    II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

    III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

        (a) become effective on or after 1st May, 1960, or

        (b) become effective before that date and contain the Limited Exclusion Provision set out above; provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company (new, renewal and replacement) affording the following coverages:

    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

    I. Under any Liability Coverage, to {injury, sickness, disease, death or destruction / bodily injury or property damage}

        (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to {immediate medical or surgical relief, / first aid,} to expenses incurred with respect to {bodily injury, sickness, disease or death / bodily injury} resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

- 1 -

III. Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* / bodily injury or property damage } resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c) the { *injury, sickness, disease, death or destruction* / bodily injury or property damage } arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to { *injury to or destruction of property at such nuclear facility.* / property damage to such nuclear facility and any property thereat. }

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

{ *With respect to injury to or destruction of property, the word "injury" or "destruction"* / "property damage" includes all forms of radioactive contamination of property. / *includes all forms of radioactive contamination of property.* }

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

    (i) Garage and Automobile Policies issued by the Company on New York risks, or

    (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts, until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

---

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

ENDORSEMENT  NO....1.........

FOR ATTACHMENT TO CERTIFICATE NO. .65746......... BETWEEN A/C: .BEECHAM, INC., ET AL.........
R/I: .THE NORTH RIVER INSURANCE COMPANY......#DCL 000 199.........................and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT APRIL 1, 1978..........

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

```
FOR AND IN CONSIDERATION OF A NET RETURN PREMIUM OF $1,600.20,
IT IS UNDERSTOOD AND AGREED THAT THE CERTIFICATE OF WHICH THIS
ENDORSEMENT FORMS A PART OF SHALL BE AMENDED TO ACCEPT THE TERMS
AND CONDITIONS OF NORTH RIVER INSURANCE COMPANY'S ENDORSEMENT
NUMBER ONE (1).
```

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_____          _____
        Secretary                        President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ........25th........ DAY OF .....MAY........., 1978......

CONSTITUTION REINSURANCE CORPORATION

COMPANY COPY

# EXHIBIT F

# CONSTITUTION REINSURANCE CORPORATION
### 110 WILLIAM STREET ● NEW YORK, N.Y. 10038



64693
CERTIFICATE NUMBER

CEDING COMPANY AND ADDRESS

THE INTERNATIONAL INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| COMBUSTION ENGINEERING, INC. | XS 4080 | | |
| CITY | | STATE | ZIP |
| STAMFORD | | CONNECTICUT | 06902 |

| REINSURANCE POLICY PERIOD | | COMPANY POLICY PERIOD | | RENEWAL CERTIFICATE NO. |
|---|---|---|---|---|
| 01/01/77 | 01/01/78 | 01/01/77 TO 01/01/78 | | |

REPLACES CERTIFICATE NO.

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$2,000,000 PART OF $5,000,000 EACH OCCURRENCE AND AGGREGATE WHERE
APPLICABLE IN EXCESS OF $23,000,000 EACH OCCURRENCE, $33,000,000
AGGREGATE WHICH IS IN EXCESS OF $2,000,000 SELF-INSURED RETENTION
EXCEPT FOR "SPECIAL P.D." AT $3,000,000 SELF-INSURED RETENTION

**ITEM 3 - COMPANY RETENTION**

$1,000,000 PART OF THE LIMITS SHOWN IN ITEM # 2 ABOVE.

MAY 9 1977

**ITEM 4 - REINSURANCE ACCEPTED**

$500,000 PART OF THE LIMITS SHOWN IN ITEM # 2 ABOVE.

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS        ☒ CONTRIBUTING EXCESS        ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$9,000.00 LESS 22.5% CEDING COMMISSION MINIMUM AND DEPOSIT
ADJUSTABLE AT PRO RATA OF THE COMPANY'S ULTIMATE PREMIUM.

**ITEM 7 - CANCELLATION NOTICE**

45 DAYS

CONSTITUTION REINSURANCE CORPORATION

BY

AUTHORIZED SIGNATURE

VICE PRESIDENT

F-U (6.0.50 (1-77)

COMPANY COPY

ENDORSEMENT                     NO.... 1 ....

FOR ATTACHMENT TO CERTIFICATE NO. 64693 ......... BETWEEN A/C: COMBUSTION ENGINEERING, INC.,
R/I: INTERNATIONAL INSURANCE COMPANY ........ # XS 4080 .............................
CONSTITUTION REINSURANCE CORPORATION, EFFECTIVE DATE OF THIS ENDORSEMENT   MARCH 16, 1977 ...... ond

FROM: 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

IN CONSIDERATION OF AN ADDITIONAL MINIMUM AND DEPOSIT PREMIUM OF
$1.500.00 LESS 22.5% COMMISSION IT IS UNDERSTOOD AND AGREED
COVERAGE PROVIDED HEREUNDER IS EXTENDED TO INCLUDE THE GRAY TOOL
COMPANY AND ITS' SUBSIDIARIES FOLLOWING THE TERMS OF INTERNATIONAL'S
ENDORSEMENT # 1.

MAY   9 1977

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_____                                      _____
        Secretary                                                    President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ... ... 25th ... ... DAY OF ... APRIL ........ , 19 77 .
                                    CONSTITUTION REINSURANCE CORPORATION

                                    _____

COMPANY COPY

# EXHIBIT G

# CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS



65813
CERTIFICATE NUMBER

*INTERNATIONAL INSURANCE COMPANY*

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| *COMBUSTION ENGINEERING, INC.* | *XS 4427* | | |
| CITY | STATE | | ZIP |
| *STAMFORD* | *CONNECTICUT* | | *06902* |
| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. | |
| *01/01/78* | *01/01/79* | *01/01/78 TO 01/01/79* | |

REPLACES CERTIFICATE NO.

**ITEM 1 - TYPE OF INSURANCE**

*EXCESS UMBRELLA LIABILITY*

**ITEM 2 - POLICY LIMITS & APPLICATION**

*$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $5,000,000 EXCESS OF $22,000,000 WHICH IN TURN IS EXCESS OF UNDERLYING INSURANCE*

**ITEM 3 - COMPANY RETENTION**

*$1,500,000 SUBJECT TO FACULTATIVE REINSURANCE*

MAY 30 1978

**ITEM 4 - REINSURANCE ACCEPTED**

*$500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $2,000,000 PART OF $5,000,000 WHICH IS EXCESS OF $22,000,000 WHICH IN TURN IS EXCESS OF UNDERLYING INSURANCE*

**ITEM 5 - BASIS OF ACCEPTANCE**

[ ] EXCESS OF LOSS    [X] CONTRIBUTING EXCESS    [ ] NON-CONCURRENT

**ITEM 6 - PREMIUM**

*$9,687.50 NET*

**ITEM 7 - CANCELLATION NOTICE**

*45 DAYS*

CONSTITUTION REINSURANCE CORPORATION

BY _____
AUTHORIZED SIGNATURE

*VICE PRESIDENT*

COMPANY COPY

# EXHIBIT H

**CONSTITUTION REINSURANCE CORPORATION**
110 WILLIAM STREET • NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS

66488
CERTIFICATE NUMBER

3/6/79

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER |
|---|---|
| COMBUSTION ENGINEERING INC. | 522-000415-8 |

| CITY | STATE | ZIP |
|---|---|---|
| STAMFORD | CONNECTICUT | 06902 |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| 01/01/79    01/01/80 | 01/01/79 TO 01/01/80 | |

REPLACES CERTIFICATE NO.  65813

ITEM 1 - TYPE OF INSURANCE

EXCESS UMBRELLA LIABILITY EXCLUDING PROFESSIONAL LIABILITY

ITEM 2 - POLICY LIMITS & APPLICATION

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $5,000,000 EXCESS OF $22,000,000 WHICH IN TURN IS EXCESS OF
PRIMARY

ITEM 3 - COMPANY RETENTION

$1,500,000

ITEM 4 - REINSURANCE ACCEPTED

$500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $2,000,000 PART OF $5,000,000 WHICH IS IN EXCESS OF $22,000,000
WHICH IN TURN IS EXCESS OF PRIMARY

ITEM 5 - BASIS OF ACCEPTANCE

[ ] EXCESS OF LOSS     [X] CONTRIBUTING EXCESS     [ ] NON-CONCURRENT

ITEM 6 - PREMIUM

$12,500.00 LESS 22.5% COMMISSION

ITEM 7 - CANCELLATION NOTICE

75 DAYS

CONSTITUTION REINSURANCE CORPORATION     BY _____
AUTHORIZED SIGNATURE
VICE PRESIDENT

COMPANY COPY

# CERTIFICATE OF REINSURANCE

**CONSTITUTION REINSURANCE CORPORATION**
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A. The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or [illegible] ... The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto [illegible] ... changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the [illegible] ... Certificate of Reinsurance or claims in connection herewith.

B. Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have such made [illegible] ... giving rise to such damages.

[illegible]

[illegible]

E. [illegible] ... the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon submission of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contribution excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

F. Definitions

As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT The reinsurance provided does not apply to any [illegible] ... Declarations. The intention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS Shall consist of those parts or portions of the Company's investigation claim file which in the judgment of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

G. The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

H. The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

I. In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of the insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured [illegible] ... right to investigate each such claim [illegible] ... in the proceeding where such claim is to be adjudicated [illegible] ... which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

J. The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

K. Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

L. The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

James J. [illegible] Secretary

[illegible] President

## NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY – REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in the paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I. It is agreed that the policy does not apply under any liability coverage,

to { *injury, sickness, disease, death or destruction* / bodily injury or property damage } with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Limited Exclusion Provision set out above; provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision).

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* / bodily injury or property damage }

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating

to { *immediate medical or surgical relief,* / first aid, } to expenses incurred with respect

to { *bodily injury, sickness, disease or death* / bodily injury } resulting from the hazardous properties of nuclear material

and arising out of the operation of a nuclear facility by any person or organization.

- 1 -

III. Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* / bodily injury or property damage } resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the { *injury, sickness, disease, death or destruction* / bodily injury or property damage } arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to { *injury to or destruction of property at such nuclear facility.* / property damage to such nuclear facility and any property thereat. }

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

{ *With respect to injury to or destruction of property, the word "injury" or "destruction"* / "property damage" includes all forms of radioactive contamination of property. / *includes all forms of radioactive contamination of property.* }

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts, until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

ENDORSEMENT                              NO. 1

FOR ATTACHMENT TO CERTIFICATE NO. .. 66488   BETWEEN A.I.C. ... COMBUSTION ENGINEERING INC.
R.I.I.: INTERNATIONAL INSURANCE COMPANY ......... #522-000415-8 ..................... and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT .. JANUARY 1, 1979...

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

FOR VALUE RECEIVED, THE FOLLOWING ITEMS SHALL BE AMENDED TO READ AS
FOLLOWS:

CEDING COMPANY AND ADDRESS

INTERNATIONAL INSURANCE COMPANY

ITEM 3 - COMPANY RETENTION

$1,500,000 SUBJECT TO FACULTATIVE REINSURANCE

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_____                    _____
Secretary                                    President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ........... 27th ...   DAY OF  FEBRUARY    , 19 .. 79 ...

CONSTITUTION REINSURANCE CORPORATION

_____

COMPANY COPY

# EXHIBIT I

# CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS

CERTIFICATE NUMBER **67607**

INTERNATIONAL INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| COMBUSTION ENGINEERING, INC., ETAL | 522-000435-6 | | |
| CITY | | STATE | ZIP |
| STAMFORD | CONNECTICUT | | 06902 |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| 01/01/80 | 01/01/81 | 01/01/80 TO 01/01/81 | |

REPLACES CERTIFICATE NO.        66488

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY EXCLUDING PROFESSIONAL LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $5,000,000 EXCESS OF $22,000,000 WHICH IN TURN IS EXCESS
OF PRIMARY

**ITEM 3 - COMPANY RETENTION**

$1,500,000    *See Endos #1*    JAN 30 1980    **N.Y.**

**ITEM 4 - REINSURANCE ACCEPTED**

$500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $2,000,000 PART OF $5,000,000 WHICH IS IN EXCESS OF
$22,000,000 WHICH IN TURN IS EXCESS OF PRIMARY

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS      ☒ CONTRIBUTING EXCESS      ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$10,000.00 LESS 22.5% COMMISSION

**ITEM 7 - CANCELLATION NOTICE**
75 DAYS

CONSTITUTION REINSURANCE CORPORATION

BY _____
AUTHORIZED SIGNATURE
VICE PRESIDENT

FM 16 2-80 (1-77)                    COMPANY COPY

# CERTIFICATE OF REINSURANCE
## CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A. The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

B. Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

C. In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

D. As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

E. All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employees) incurred by the Company in the investigation and the proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

F. Definitions
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS Shall consist of those parts or portions of the Company's investigative claim file which in the Judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the proportion of any loss reported hereunder.

G. The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

H. The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

I. In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

J. The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding company.

K. Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

L. The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof**, CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary

_____ President

## NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY – REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

   I. It is agreed that the policy does not apply under any liability coverage, to { *injury, sickness, disease, death or destruction* *bodily injury or property damage* } with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

   II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

   III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

     (a) become effective on or after 1st May, 1960, or

     (b) become effective before that date and contain the Limited Exclusion Provision set out above; provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company (new, renewal and replacement) affording the following coverages:

   Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

   I. Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* *bodily injury or property damage* }

     (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

     (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { *immediate medical or surgical relief,* *first aid,* } to expenses incurred with respect to { *bodily injury, sickness, disease or death* *bodily injury* } resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

- 1 -

III. Under any Liability Coverage, to *{ injury, sickness, disease, death or destruction }* resulting from the
bodily injury or property damage
hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of,
an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used,
processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) the *{ injury, sickness, disease, death or destruction }* arises out of the furnishing by an insured of
bodily injury or property damage
services, materials, parts or equipment in connection with the planning, construction, mainte-
nance, operation or use of any nuclear facility, but if such facility is located within the United
States of America, its territories or possessions or Canada, this exclusion (c) applies only
to *{ injury to or destruction of property at such nuclear facility. }*
property damage to such nuclear facility and any property thereat.

IV. As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means
source material, special nuclear material or byproduct material; "source material", "special nuclear
material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954
or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or
liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste
material (1) containing byproduct material and (2) resulting from the operation by any person or
organization of any nuclear facility included within the definition of nuclear facility under paragraph (a)
or (b) thereof; "nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plu-
tonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear
material if at any time the total amount of such material in the custody of the insured at the
premises where such equipment or device is located consists of or contains more than 25 grams
of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium
235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal
of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site
and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to
sustain nuclear fission in a self-supporting chain reaction, or to contain a critical mass of fissionable
material;
*{ With respect to injury to or destruction of property, the word "injury" or "destruction" }*
"property damage" includes all forms of radioactive contamination of property.
*{ includes all forms of radioactive contamination of property. }*

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph
(3), whether new, renewal or replacement, being policies which become effective on or after 1st May,
1960, provided this paragraph (3) shall not be applicable to

   (i) Garage and Automobile Policies issued by the Company on New York risks, or

   (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,
until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority
having jurisdiction thereof.

   (4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed
that paragraphs (2) and (3) above are not applicable to original liability policies of the Company in Canada and
that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Pro-
visions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

---

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision
shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad
Exclusion Provision containing those words.

*N. Y.*

- 2 -

ENDORSEMENT                           NO. 1

FOR ATTACHMENT TO CERTIFICATE NO. F-67607      BETWEEN A/C: COMBUSTION ENGINEERING, INC.
ETAL  R/I: INTERNATIONAL INSURANCE COMPANY      #522-000435-6      and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT  JANUARY 1, 1980

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS.

IT IS UNDERSTOOD AND AGREED THAT:

- [ ] ITEM 1 - TYPE OF INSURANCE
- [ ] ITEM 2 - POLICY LIMITS AND APPLICATION
- [x] ITEM 3 - COMPANY RETENTION
- [ ] ITEM 4 - REINSURANCE ACCEPTED
- [ ] ITEM 5 - BASIS OF ACCEPTANCE
- [ ] ITEM 6 - PREMIUM
- [ ] ITEM 7 - CANCELLATION NOTICE

- [ ] AUDIT
- [ ] INCEPTION DATE
- [ ] EXPIRATION DATE
- [ ] NAME OF INSURED
- [ ] ENDORSEMENT NUMBER
- [ ] CANCELLED

[x] SHALL BE AMENDED TO READ AS FOLLOWS:

$1,500,000 SUBJECT TO FACULTATIVE REINSURANCE

N.Y.

| ADDITIONAL PREMIUM | RETURN PREMIUM | CEDING COMMISSION |
|---|---|---|
| - - - | - - - | - - - |

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_Secretary_                                   _President_

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ........22nd...... DAY OF ....JANUARY...... , 19...80.
                                    CONSTITUTION REINSURANCE CORPORATION
                                    Thomas F. Devine

FM 16.0.112 (4-78)

COMPANY COPY

# EXHIBIT J

# CONSTITUTION REINSURANCE CORPORATION
### 110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS

INTERNATIONAL INSURANCE COMPANY



69185
**CERTIFICATE NUMBER**

APR 9 1981

| NAME OF INSURED | COMPANY POLICY NUMBER | |
|---|---|---|
| COMBUSTION ENGINEERING, INC., ETAL | 522-003-002-4 | |
| CITY | STATE | ZIP |
| STAMFORD | CONNECTICUT | 06902 |
| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
| 01/01/81 | 01/01/82 | 01/01/81 TO 01/01/82 | |

**REPLACES CERTIFICATE NO.**

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $5,000,000 EXCESS OF $22,000,000 WHICH IN TURN IS EXCESS
OF PRIMARY

**ITEM 3 - COMPANY RETENTION**

$1,500,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $2,000,000 PART OF $5,000,000 WHICH IS EXCESS OF $22,000,000
WHICH IN TURN IS EXCESS OF PRIMARY

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS          ☒ CONTRIBUTING EXCESS          ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$6,587.50 NET

**ITEM 7 - CANCELLATION NOTICE**

45 DAYS

CONSTITUTION REINSURANCE CORPORATION

BY

AUTHORIZED SIGNATURE

SENIOR VICE PRESIDENT

COMPANY COPY

## CERTIFICATE OF REINSURANCE

### CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

**B.** Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages

**C.** In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance

**D.** As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate with the Company at its own expense and to join in the defense and control of any claim, suit or proceeding relative to any loss or occurrence where the claim or suit involves or appears reasonably likely to involve the Reinsurer.

All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**F. Definitions**
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined so though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS Shall consist of those parts or portions of the Company's investigative claim file which in the judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

**G.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**I.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense which it may deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

**J.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

**K.** Should the Company's policy be cancelled this Certificate may terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate, Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**L.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary

_____ President

N. Y.

# EXHIBIT K

# CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET, NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS

**69967**
CERTIFICATE NUMBER

INTERNATIONAL INSURANCE COMPANY

REINSURING AGREEMENTS AND CONDITIONS

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| COMBUSTION ENGINEERING, INC., ET AL | 529-030879-9 | | |
| CITY | STATE | | ZIP |
| STAMFORD | CONNECTICUT | | 06902 |
| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. | |
| 01/01/82 | 01/01/83 | 01/01/82 TO 01/01/83 | |

REPLACES CERTIFICATE NO.  69185

ITEM 1 - TYPE OF INSURANCE

EXCESS UMBRELLA LIABILITY INCLUDING ARCHITECTS' AND ENGINEERS' ERRORS AND OMISSIONS

ITEM 2 - POLICY LIMITS & APPLICATION

$12,500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $25,000,000 IN EXCESS OF $22,000,000 WHICH IN TURN IS IN EXCESS OF PRIMARY

ITEM 3 - COMPANY RETENTION

$12,000,000 SUBJECT TO FACULTATIVE REINSURANCE

ITEM 4 - REINSURANCE ACCEPTED

$500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $12,500,000 PART OF $25,000,000 WHICH IS IN EXCESS OF $22,000,000 WHICH IN TURN IS IN EXCESS OF PRIMARY

ITEM 5 - BASIS OF ACCEPTANCE

[ ] EXCESS OF LOSS      [X] CONTRIBUTING EXCESS      [ ] NON-CONCURRENT

ITEM 6 - PREMIUM

$4,650.00 NET

ITEM 7 - CANCELLATION NOTICE
75 DAYS

CONSTITUTION REINSURANCE CORPORATION        BY _____
_____
AUTHORIZED SIGNATURE
SENIOR VICE PRESIDENT

COMPANY COPY



# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038

herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance, if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM at the hour ... than the place specified in the Company's policy. The Company shall ... ... the Reinsurer with a copy of its policies and all endorsements thereto and as a condition precedent hereto to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

**B.** Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits, or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

... In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

**D.** As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves ... or injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate ... claim or suit, it shall nevertheless have the option of associating with the Company, at its own expense, in the defense and control of any claim or suit involving this reinsurance, with the full cooperation of the Company. In such ... it is ... it is a person and to join with the Company in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

**E.** All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**F.** **Definitions**

As used in this Certificate the following terms shall have the meaning set opposite each.

**EXCESS OF LOSS** The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

**CONTRIBUTING EXCESS** The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

**NON-CONCURRENT** The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those ... ... as set forth in the Declarations. The reinsurance of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

**DEFINITIVE STATEMENT OF LOSS** Shall consist of those parts or portions of the Company's investigation claim file which in the judgment of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

**G.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**I.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder, within a reasonable time after such claim is filed in the insolvency proceeding. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

**J.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

**K.** Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**L.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary

_____ President

### INTERMEDIARY CLAUSE

CERTIFICATE NO. _____69967_____    *COMBUSTION ENGINEERING, INC., ET AL*

*PCM INTERMEDIARIES, LTD. - NEW YORK* _____ IS HEREBY RECOGNIZED AS THE INTERMEDIARY THROUGH WHOM ALL FUNDS DUE EITHER PARTY TO THE CERTIFICATE NOTED ABOVE ARE TO BE TRANS- MITTED.

PAYMENTS BY THE COMPANY TO THE INTERMEDIARY SHALL BE DEEMED TO CONSTITUTE PAYMENT TO CONSTITUTION REINSURANCE CORPORA- TION AND PAYMENTS BY CONSTITUTION REINSURANCE CORPORATION TO THE INTERMEDIARY SHALL BE DEEMED TO CONSTITUTE PAYMENT TO THE COMPANY ONLY TO THE EXTENT SUCH PAYMENTS ARE ACTUALLY RECEIVED BY THE COMPANY.

_____
Authorized Representative

FM. 18.0.137 (6-80)

# EXHIBIT L




# CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET • NEW YORK, N.Y. 10038

**70643**
CERTIFICATE NUMBER

CEDING COMPANY AND ADDRESS

## INTERNATIONAL INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| COMBUSTION ENGINEERING, INC. | 522 034493 4 | | |
| CITY | STATE | | ZIP |
| STAMFORD | CONNECTICUT | | 06902 |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| 01/01/83    01/01/84 | 01/01/83 TO 01/01/84 | 69967 |

REPLACES CERTIFICATE NO.

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA INCLUDING ARCHITECTS AND ENGINEERS ERRORS AND OMISSIONS

**ITEM 2 - POLICY LIMITS & APPLICATION**

$12,500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $25,000,000 IN EXCESS OF $22,000,000 WHICH IN TURN IS IN
EXCESS OF UNDERLYING INSURANCE

**ITEM 3 - COMPANY RETENTION**

$12,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $12,500,000 PART OF $25,000,000 WHICH IS IN EXCESS OF
$22,000,000 WHICH IN TURN IS IN EXCESS OF UNDERLYING INSURANCE

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$4,500.00 NET

**ITEM 7 - CANCELLATION NOTICE**

75 DAYS

FM 16.0.83 (1-77)

CONSTITUTION REINSURANCE CORPORATION

BY _____
AUTHORIZED SIGNATURE

SENIOR VICE PRESIDENT

FM 16.0.83 (1-77)

COMPANY COPY

CONSTITUTION REINSURANCE CORPORATION
**CERTIFICATE OF REINSURANCE**

CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038

herein called the Reinsurer

**REINSURING AGREEMENTS AND CONDITIONS**

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and, as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

**B.** Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

**C.** In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

**D.** As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

**E.** All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employees) incurred by the Company in the investigation and, in proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**F. Definitions**
As used in this Certificate the following terms shall have the meaning set opposite each.

**EXCESS OF LOSS** The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

**CONTRIBUTING EXCESS** The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlement(s) in that percentage set forth in Item 4 of the Declarations.

**NON-CONCURRENT** The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

**DEFINITIVE STATEMENT OF LOSS** Shall consist of those parts or portions of the Company's investigative claim file which in the judgment of the Reinsurer, are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the proprieties of any loss reported hereunder.

**G.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, after its reimbursement obtained of recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**I.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

**J.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

**K.** Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter, the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**L.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____  Secretary

_____  President

INTERMEDIARY CLAUSE

CERTIFICATE NO.____70643_____ COMBUSTION ENGINEERING, INC.

_PCM INTERMEDIARIES, LTD. - NEW YORK_____ IS HEREBY
RECOGNIZED AS THE INTERMEDIARY THROUGH WHOM ALL FUNDS DUE
EITHER PARTY TO THE CERTIFICATE NOTED ABOVE ARE TO BE TRANS-
MITTED.

PAYMENTS BY THE COMPANY TO THE INTERMEDIARY SHALL BE DEEMED
TO CONSTITUTE PAYMENT TO CONSTITUTION REINSURANCE CORPORA-
TION AND PAYMENTS BY CONSTITUTION REINSURANCE CORPORATION
TO THE INTERMEDIARY SHALL BE DEEMED TO CONSTITUTE PAYMENT TO
THE COMPANY ONLY TO THE EXTENT SUCH PAYMENTS ARE ACTUALLY
RECEIVED BY THE COMPANY.

_____
            Authorized Representative

FM. 16.0.137 (5-80)

# EXHIBIT M

# CONSTITUTION REINSURANCE CORPORATION
### 110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS



68717
CERTIFICATE NUMBER

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| ROCKWELL INTERNATIONAL CORPORATION | XSI 7165 | | |
| CITY | STATE | | ZIP |
| PITTSBURGH | PENNSYLVANIA | | 15219 |
| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. | |
| 10/01/80    10/01/81 | 10/01/80 TO 10/01/81 | | |

**REPLACES CERTIFICATE NO.** 66799

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$28,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $40,000,000 EXCESS OF $60,000,000 WHICH IN TURN IS EXCESS
OF PRIMARY

**ITEM 3 - COMPANY RETENTION**

$26,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $28,000,000 PART OF $40,000,000 WHICH IS EXCESS OF
$60,000,000 WHICH IN TURN IS EXCESS OF PRIMARY

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$3,100.00 NET

> GUY CARPENTER & COMPANY, Inc.
> MIDWEST DEPARTMENT
> **REINSURANCE**
> 100 SOUTH WACKER DRIVE
> CHICAGO, ILLINOIS 60606

**ITEM 7 - CANCELLATION NOTICE**

90 DAYS

CONSTITUTION REINSURANCE CORPORATION

BY _____
AUTHORIZED SIGNATURE
SENIOR VICE PRESIDENT

FM 18 0 80 (1-77)

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET
NEW YORK, NEW YORK 10038

herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

**B.** Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

**C.** In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

**D.** As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

**E.** All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and/or in proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**F.** Definitions

As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS — The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS — The Company's policy applies in excess of other valid insurance, reinsurance or self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT — The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS shall consist of those parts or portions of the Company's investigation claim file which in the judgement of the Reinsurer are sufficient for the Reinsurer to establish adequate loss reserves and determine the procedures of any loss reported hereunder.

**G.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, recoveries received obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**I.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or to its receiver, liquidator or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

**J.** The Reinsurer may offset any balance(s), whether on account of premium, commission, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other reinsurance agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

**K.** Should the Company's policy be cancelled and the date. This Certificate may also be cancelled at any time by the Company or by the Reinsurer upon not less than number of days shown in Item 2 to and ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**L.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____
Secretary

_____
President