# Exhibit 1, Part 2

# EXHIBIT N

# CONSTITUTION REINSURANCE CORPORATION
### 110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS



78662
CERTIFICATE NUMBER

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| ROCKWELL INTERNATIONAL CORPORATION | XSI 8544 | | |
| CITY | STATE | | ZIP |
| PITTSBURGH | PENNSYLVANIA | | 15222 |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| 10/01/82 \| 10/01/83 | 10/01/82 TO 10/01/83 | |

**REPLACES CERTIFICATE NO.**

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$52,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $115,000,000 IN EXCESS OF $235,000,000 WHICH IN TURN IS
IN EXCESS OF UNDERLYING INSURANCE

**ITEM 3 - COMPANY RETENTION**

$49,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$3,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $52,000,000 PART OF $115,000,000 WHICH IS IN EXCESS OF
$235,000,000 WHICH IN TURN IS IN EXCESS OF UNDERLYING INSURANCE

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS      ☒ CONTRIBUTING EXCESS      ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$2,250.00 LESS 22.5% CEDING COMMISSION

**ITEM 7 - CANCELLATION NOTICE**

90 DAYS

FM 16.0.83 (1-77)

CONSTITUTION REINSURANCE CORPORATION

BY _____
AUTHORIZED SIGNATURE

SENIOR VICE PRESIDENT

FM 16.0.83 (1-77)

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

**B.** Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

**C.** In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

**D.** As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with *the full cooperation of the Company, to associate* counsel at its own expense and to join with the Company and its representative in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

**E.** All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**F.** Definitions

As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS Shall consist of those parts or portions of the Company's investigative claim file which in the judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

**G.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H.** The Company shall be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**I.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

**J.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

**K.** Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**L.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary                    _____ President

REINSURANCE ABSTRACT    POL # XSI 8544    EFFECTIVE: 10-1-82

| Treaty/ Facultative | % | Amount | Gross Premium | Total Ceding Cmsm. | Fac. Cert. #/Detail |
|---|---|---|---|---|---|
| Jet | | 1,416,695 | 1,062.50 | | |
| B-140 | | 7,083,305 | 5,312.50 | 27.5 | |
| Skandia | | 5,000,000 | 3,750 | 22.5 | SC 30105 |
| INA Re | | 3,500,000 | 2,625. | 22.5 | FRC 0391 55 |
| Constitution | | 3,000,000 | 2,250 | 22.5 | 78662 |
| Bony | | 2,000,000 | 1,500. | 22.5 | C13250 |
| Phil Re | | 1,000,000 | 750 | 22.5 | N 20913 |
| Phil Mfg Mut. c/o Burt+Schell | | 1,000,000 | 750. | 22.5 | |
| NY Ins Ex. | | 12,500,000 | 9,375. | 22.5 | |
| Zurich Re | | 3,000,000 | 2,250. | 22.5 | |
| Illinois Ins Ex | | 2,500,000 | 1,875. | 22.5 | |
| Unul Re | | 2,500,000 | 1,875. | 22.5 | |
| Buffalo Re | | 2,250,000 | 1,687.50 | 22.5 | |
| Imperial Casualty | | 1,250,000 | 1,312.50 | 22.5 | |
| UIR | | 1,500,000 | 1,125 | 22.5 | |
| North River | | 1,000,000 | 750. | CODED | |
| Christiana | | 1,000,000 | 750. | 22 -OCT | '82 |
| | | 52,000,000 | 39,000. | | |

LWB 6 (1/72)    Code Period   12   months @

# EXHIBIT O

# CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS



71542
CERTIFICATE NUMBER

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| ROCKWELL INTERNATIONAL CORPORATION | XSI 8929 | | |
| CITY | STATE | | ZIP |
| PITTSBURGH | PENNSYLVANIA | | 15219 |
| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. | |
| 10/01/83 \| 10/01/84 | 10/01/83 TO 10/01/84 | | |

**REPLACES CERTIFICATE NO.**

**ITEM 1 - TYPE OF INSURANCE**

FOLLOWING FORM EXCESS LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$28,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $40,000,000 IN EXCESS OF $60,000,000 WHICH IN TURN IS IN EXCESS OF PRIMARY INSURANCE

**ITEM 3 - COMPANY RETENTION**

$26,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $28,000,000 WHICH IN TURN IS PART OF $40,000,000 WHICH IS IN EXCESS OF $60,000,000 WHICH IN TURN IS IN EXCESS OF PRIMARY INSURANCE

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$2,441.25 NET

**ITEM 7 - CANCELLATION NOTICE**

75 DAYS

FM 16.0.93 (1-77)

CONSTITUTION REINSURANCE CORPORATION

BY _____
AUTHORIZED SIGNATURE
SENIOR VICE PRESIDENT

FM 16.0.93 (1-77)

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

**B.** Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

**C.** In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

**D.** As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

**E.** All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**F.** Definitions
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS  The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS  The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT  The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS  Shall consist of those parts or portions of the Company's investigative claim file which in the Judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

**G.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**I.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

**J.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

**K.** Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**L.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_James J. Shaw_ Secretary                     _David Dumaes_ President

IT IS AGREED THAT PART A OF THE NEXT TO LAST SENTENCE OF PARAGRAPH K OF THIS CERTIFICATE IS AMENDED TO READ:

    A)   THE DATE WRITTEN NOTICE IS MAILED PLUS THE NUMBER OF DAYS REQUIRED TO CANCEL THE COMPANY'S POLICY REINSURED HEREBY PLUS THIRTY DAYS, NOT TO EXCEED 90 DAYS IN ALL;

This endorsement forms a part of and is for attachment to the following described certificate of reinsurance issued by the company designated therein, takes effect on the effective date of said certificate of reinsurance unless another effective date is shown below, at the hour stated in said certificate of reinsurance and expires concurrently with the said certificate of reinsurance.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared With The Certificate Of Reinsurance Or Is Not To Be Effective With The Certificate Of Reinsurance | |
|---|---|---|---|
| ENDT. NO. | CERTIFICATE NO. | ISSUED TO: | EFFECTIVE DATE OF THIS ENDORSEMENT: |
| 1 | 363-83-63 | R/I  INTERNATIONAL SURPLUS LINES INSURANCE CO. <br> A/C  ROCKWELL INTERNATIONAL CORPORATION | 10/1/83 |

CONTINENTAL CASUALTY COMPANY

**CNA**
INSURANCE FROM

DAW
Blank Endorsement
C-17093-A

Countersigned by  C. D. NOLLOY
Authorized Representative

## INTERMEDIARY CLAUSE

CERTIFICATE NO.____71542_____  ROCKWELL INTERNATIONAL CORPORATION

 GUY CARPENTER & COMPANY, INC. – CHICAGO_____ IS HEREBY
RECOGNIZED AS THE INTERMEDIARY THROUGH WHOM ALL FUNDS DUE
EITHER PARTY TO THE CERTIFICATE NOTED ABOVE ARE TO BE TRANS-
MITTED.

PAYMENTS BY THE COMPANY TO THE INTERMEDIARY SHALL BE DEEMED
TO CONSTITUTE PAYMENT TO CONSTITUTION REINSURANCE CORPORA-
TION AND PAYMENTS BY CONSTITUTION REINSURANCE CORPORATION
TO THE INTERMEDIARY SHALL BE DEEMED TO CONSTITUTE PAYMENT TO
THE COMPANY ONLY TO THE EXTENT SUCH PAYMENTS ARE ACTUALLY
RECEIVED BY THE COMPANY.

_____
Authorized Representative

FM. 16.0.137 (8-82)

# EXHIBIT P

# CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET ● NEW YORK, N.Y. 10038



**CERTIFICATE NUMBER**

61627

CEDING COMPANY AND ADDRESS

North River Insurance Company

| NAME OF INSURED | | | | RENEWAL CERTIFICATE NUMBER |
|---|---|---|---|---|
| Rockwell International Corporation | | | | |
| CITY | STATE | | ZIP | REPLACES CERTIFICATE NUMBER |
| Pittsburgh | Pennsylvania | | | |
| COMPANY POLICY NUMBER | COMPANY POLICY PERIOD | | REINSURANCE POLICY PERIOD | |
| XS 3551 | 4-1-74 to 4-1-75 | | 4-1-74 to 4-1-75 | |

**ITEM 1– TYPE OF INSURANCE**

Excess Liability

**ITEM 2– POLICY LIMITS & APPLICATION**

$25,000,000 each occurrence and in the aggregate where applicable
part of $40,000,000 excess of $60,000,000

**ITEM 3– COMPANY RETENTION**

$23,000,000 subject to facultative rensurance

**ITEM 4– REINSURANCE ACCEPTED**

$2,000,000 each occurrence and in the aggregate where applicable part
of $25,000,000 part of $40,000,000 which is excess of $60,000,000

**ITEM 5– BASIS OF ACCEPTANCE**

[ ] EXCESS OF LOSS      [X] CONTRIBUTING EXCESS      [ ] NON–CONCURRENT

THE PREMIUM FOR THIS REINSURANCE SHALL BE   $1,400.00 less 22.5% ceding commission.

CONSTITUTION REINSURANCE CORPORATION

BY _____
AUTHORIZED SIGNATURE

Assistant Vice President

COMPANY COPY

CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

REINSURING AGREEMENTS AND CONDITIONS



In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A.   The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as nonconcurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this certificate of reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this certificate of reinsurance or claims in connection therewith.

B.   In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this agreement.

C.   The Company shall notify the Reinsurer promptly of any occurrence which in the Company's estimate of the value of injuries or damages sought, without regard to liability, might result in judgement in an amount sufficient to involve this certificate of reinsurance. The Company shall also notify the Reinsurer promptly of any occurrence in respect of which the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention specified in Item 3 of the Declarations, or, if this reinsurance applies on a contributing excess basis, when notice of claim is received by the Company. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this certificate of reinsurance.

D.   All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this certificate of reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and settlement of claims or suits and its proportion of court costs and interest on any judgement or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the declarations in the first layer of participation.

E.   Definitions

As used in this Certificate the following terms shall have the meaning set opposite each.

Excess of Loss   The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations, applie(s) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

Contributing Excess   The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

Non-Concurrent   The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

F.   The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

G.   The Company will be liable for all taxes on premiums ceded to the Reinsurer under this certificate of reinsurance.

H.   In the event of the insolvency of the Company, the reinsurance provided by this certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company, its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

I.   The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this certificate of reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding company.

J.   Should the Company's policy be cancelled this certificate shall terminate automatically at the same time and date. This certificate may also be cancelled by the company or by the reinsurer upon not less than thirty days prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the company's calculation in the use of short rate or pro rata tables.

K.   The terms of this certificate of reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this certificate of reinsurance to be signed by its President and Secretary at New York, New York, but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____
Secretary

_____
President

ENDORSEMENT                                    NO. 1. (Revised)

FOR ATTACHMENT TO CERTIFICATE NO.   61627.   BETWEEN A./C: ROCKWELL INTERNATIONAL
CORPORATION...R/I NORTH RIVER INSURANCE COMPANY.... ... ... .. ...... and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT      April 1, 1974 ....

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

FOR AND IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $1,708.00
LESS 22.5% CEDING COMMISSION, PAYABLE 4-1-75, IT IS UNDERSTOOD AND
AGREED THAT THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS
A PART IS EXTENDED TO EXPIRE ON APRIL 1, 1976.

IT IS FURTHER UNDERSTOOD AND AGREED THAT THE TERMS AND
CONDITIONS OF ENDORSEMENT #1 ARE HEREBY NULL AND VOID.

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_____                              _____
Secretary                                      President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS  ....8th.... ... . ... DAY OF ..April.... ... ......., 19..75...

CONSTITUTION REINSURANCE CORPORATION

_____

COMPANY COPY

GUY CARPENTER & COMPANY, INC.

Rockwell Int'l
Our File 1377-00-0047/1

Mr. Piety                    - 2 -                August 28, 1974

P.S.  Also, enclosed are the following:

       Endorsement No. 2 to Carpenter Management's
       Certificate 7001267
                  and
       Endorsement No. 1 to Constitution Reinsurance
       Corporation's Certificate 61627

In addition, in accordance with your instructions, we are
requesting reinsurers to endorse their Certificates to amend
the cancellation to read "original plus 30 days".

ENDORSEMENT                    NO...1......

FOR ATTACHMENT TO CERTIFICATE NO.    61627      BETWEEN  A/C: Rockwell International Corp...
.R/I: North River Insurance Co. ... ... .... ... ... ... .... ... .... and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT    April 1, 1974  ....

FROM. 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

For and in consideration of an additional premium of $1,400.00
less 22.5% ceding commission, payable 4-1-75, it is understood
and agreed that the certificate of which this endorsement forms
a part is extended to expire on April 1, 1976.

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                          President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ... ....15th ... ... ..'. DAY OF ... August ........., 19..74...

CONSTITUTION REINSURANCE CORPORATION

COMPANY COPY

2

ENDORSEMENT

NO...2......

FOR ATTACHMENT TO CERTIFICATE NO. 61627    .  BETWEEN  A/C: ROCKWELL INTERNATIONAL
. CORP.    R/I: NORTH RIVER INSURANCE COMPANY #XS 3551 APRIL 1, 1974 ···  and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

FOR VALUE RECEIVED IT IS AGREED THAT THE CERTIFICATE
OF WHICH THIS ENDORSEMENT FORMS A PART SHALL BE
AMENDED TO REFLECT A CANCELLATION NOTIFICATION
PERIOD OF (60) SIXTY DAYS IN LIEU OF (30) THIRTY DAYS
AS SHOWN.

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                      President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS .............. .......... DAY OF .. ...... ....... ..., 19 ....
24TH                      OCTOBER                74

CONSTITUTION REINSURANCE CORPORATION

COMPANY COPY

ENDORSEMENT                          NO... 3......

FOR ATTACHMENT TO CERTIFICATE NO. 61627. .   BETWEEN  A/C: ROCKWELL INTERNATIONAL
CORPORATION   R/I: NORTH RIVER INSURANCE CO.... #XS 3551.. . ..... .. and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT  SEPTEMBER 1, 1974

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

FOR AND IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF
$178.95 LESS 22.5% CEDING COMMISSION IT IS UNDERSTOOD
AND AGREED THAT THE CERTIFICATE OF WHICH THIS ENDORSE-
MENT FORMS A PART SHALL ACCEPT THE TERMS AND CONDITIONS
OF ENDORSEMENT NUMBER (2) TWO OF THE COMPANY'S POLICY.

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                    President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS .... ......27TH... . . . DAY OF  FEBRUARY .., 19 75...

CONSTITUTION REINSURANCE CORPORATION

COMPANY COPY

# EXHIBIT Q

# CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET ● NEW YORK, N.Y. 10038



63248
CERTIFICATE NUMBER

CEDING COMPANY AND ADDRESS
THE NORTH RIVER INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| ROCKWELL INTERNATIONAL CORPORATION | XS 4211 | | |
| CITY | | STATE | ZIP |
| PITTSBURGH | | PENNSYLVANIA | |

| REINSURANCE POLICY PERIOD | | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|---|
| 04/01/76 | 04/01/77 | 4/1/76 TO 4/1/77 | |

| REPLACES CERTIFICATE NO. | 61627 |
|---|---|

**ITEM 1 - TYPE OF INSURANCE**

EXCESS LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$20,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $40,000,000 EXCESS OF $60,000,000

**ITEM 3 - COMPANY RETENTION**

$18,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $20,000,000 PART OF $40,000,000 WHICH IS EXCESS OF $60,000,000.

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS      ☒ CONTRIBUTING EXCESS      ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$3,000.00 LESS 22.5% CEDING COMMISSION

**ITEM 7 - CANCELLATION NOTICE**

60 DAYS

GUY CARPENTER & COMPANY, INC.
MIDWEST DEPARTMENT
REINSURANCE
100 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

BY
AUTHORIZED SIGNATURE
VICE PRESIDENT

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A.   The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as nonconcurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

B.   In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor have any rights under this Certificate of Reinsurance.

C.   The Company shall notify the Reinsurer promptly of any occurrence which in the Company's estimate of the value of injuries or damages sought, without regard to liability, might result in judgment in an amount sufficient to involve this Certificate of Reinsurance. The Company shall also notify the Reinsurer promptly on any occurrence in respect of which the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention specified in Item 3 of the Declaration, or, if this reinsurance applies on a contributing excess basis, when notice of claim is received by the Company. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

D.   All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and settlement of claims or suits and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

E.   Definitions

As used in this Certificate the following terms shall have the meaning set opposite each.                                                                                           each.

EXCESS OF LOSS   The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS   The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT   The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

F.   The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making their recovery. If this reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

G.   The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

H.   In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

I.   The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding company.

J.   Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded here by shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

K.   The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

In Witness Whereof, CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York, but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_James J. Shaw_                                                           _Jack Armaos_

Secretary                                                                       President

ENDORSEMENT                          NO.....1....

FOR ATTACHMENT TO CERTIFICATE NO.    63248    BETWEEN A/C: ROCKWELL INTERNATIONAL CORP. R/I: NORTH RIVER INSURANCE COMPANY  # XS 4211    and CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT    APRIL 1, 1976

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

FOR VALUE RECEIVED IT IS UNDERSTOOD AND AGREED THAT
ITEM # 1 - TYPE OF INSURANCE IS AMENDED TO READ:

FOLLOWING FORM EXCESS LIABILITY

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                    President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ................ 22nd ................ DAY OF ... JUNE ............... 19. 76.

CONSTITUTION REINSURANCE CORPORATION

COMPANY COPY

# EXHIBIT R

# CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS



64633
CERTIFICATE NUMBER

INTERNATIONAL SURPLUS LINES INSURANCE
COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| ROCKWELL INTERNATIONAL CORPORATION | XSI 3741 | | |
| CITY | STATE | | ZIP |
| PITTSBURGH | PENNSYLVANIA | | |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| 04/01/77 \| 04/01/78 | 04/01/77 TO 04/01/78 | |

**REPLACES CERTIFICATE NO.**            63248

**ITEM 1 - TYPE OF INSURANCE**

FOLLOWING FORM EXCESS LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$22,500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $40,000,000 EXCESS OF $60,000,000 WHICH IN TURN IS EXCESS
OF PRIMARY

**ITEM 3 - COMPANY RETENTION**

$20,500,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $22,500,000 PART OF $40,000,000 WHICH IS EXCESS OF
$60,000,000 WHICH IN TURN IS EXCESS OF PRIMARY

**ITEM 5 - BASIS OF ACCEPTANCE**

| ☐ EXCESS OF LOSS | ☒ CONTRIBUTING EXCESS | ☐ NON-CONCURRENT |
|---|---|---|

**ITEM 6 - PREMIUM**

$4,000.00 LESS 20% CEDING COMMISSION

**ITEM 7 - CANCELLATION NOTICE**
45 DAYS

CONSTITUTION REINSURANCE CORPORATION

BY _Joseph M Weeh_
AUTHORIZED SIGNATURE

VICE PRESIDENT

PN 16-0-04 00-763

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

**B.** Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

**C.** In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any right under this Certificate of Reinsurance.

**D.** As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

**E.** All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

**F.** Definitions
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS  The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS  The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT  The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS  Shall consist of those parts or portions of the Company's investigative claim file which in the judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the proprieties of any loss reported hereunder.

**G.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**I.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

**J.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

**K.** Should the Company's policy be cancelled, this Certificate shall terminate automatically at the same time and date, this Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 2 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**L.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary                          _____ President



# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared in Item 4 of the Declarations ... liability of the Reinsurer as specified in Item 4 of the Declarations ... share of the Company and shall be subject in all respects to ... terms and conditions of the Company's policy except when otherwise ... concurrent reinsurance ... the Declarations ... shall be as ... ified in the Company's ... specified in the Company's policy ... a copy of its policy and all ... surer promptly of all changes ... Reinsurance. The Company ... disposal of the Reinsurer ... lating to this Certificate ...

**B.** In no event ... Company insolvency, it ... rights under this Certificate ...

**C.** The Company shall investigate ... which in the Company's estimation of the value ... out regard to liability, might result in a ... this Certificate of Reinsurance. The ... premptly of any occurrence ... reserve equal to or greater than ... specified in Item 3 of the Declarations ... tributing excess basis, whenever ... the Reinsurer does not undertake ... nevertheless have the right and shall ... operation of the Company ... with the Company and its representatives ... suit or proceeding involving this Certificate of Reinsurance ...

**D.** All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and settlement of claims or suits and its proportion of all court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation

**E.** Definitions

As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS    The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted applies) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING    The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations

NON CONCURRENT    The reinsurance provided does not apply to any hazards not insured ... loss or damage covered under the Company's policy other than those ... insured, other than losses. The retention of the Company and its ... insured. Reinsurer shall be observed as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations

... shall be credited to the Company with its proportion of salvage which is recoverable, otherwise, or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied ... which the reinsurance hereunder attaches

... The Reinsurer shall be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance

... In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable to the Reinsurer on the basis of the liability of the Company ... insured or insured without diminution because of such insolvency ... receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim or suit ... Company on the policy(ies) reinsured hereunder within a reasonable time ... suit is filed in the insolvency proceedings. The Reinsurer shall have the ... to interpose at its own expense in such claim and interpose, at its own expense ... in the name of the Company ... claim to be adjudicated, any defenses ... it may deem available to the Company or its receiver, liquidator, or statutory ... The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer

I ... The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party or the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding company

**J.** Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except: ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables

**K.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York, but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_Secretary_                                    _President_

# EXHIBIT S

# CONSTITUTION REINSURANCE CORPORATION
### 110 WILLIAM STREET ● NEW YORK, N.Y. 10038



**65680**
CERTIFICATE NUMBER

CEDING COMPANY AND ADDRESS

*INTERNATIONAL SURPLUS LINES INSURANCE COMPANY*

| NAME OF INSURED | COMPANY POLICY NUMBER | |
|---|---|---|
| *ROCKWELL INTERNATIONAL* | *XSI 4448* | |

| CITY | STATE | ZIP |
|---|---|---|
| *PITTSBURGH* | *PENNSYLVANIA* | *15219* |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| *04/01/78  | 04/01/79* | *04/01/78 TO 04/01/79* | |

**REPLACES CERTIFICATE NO.**

**ITEM 1 - TYPE OF INSURANCE**
*FOLLOWING FORM EXCESS GENERAL LIABILITY, AUTO LIABILITY, WORKERS COMPENSATION AND EMPLOYERS LIABILITY*

**ITEM 2 - POLICY LIMITS & APPLICATION**
*$18,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $40,000,000 EXCESS OF $60,000,000 WHICH IN TURN IS EXCESS OF PRIMARY*

**ITEM 3 - COMPANY RETENTION**
*$16,000,000 SUBJECT TO FACULTATIVE REINSURANCE*

**ITEM 4 - REINSURANCE ACCEPTED**
*$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $18,000,000 PART OF $40,000,000 WHICH IS EXCESS OF $60,000,000 WHICH IN TURN IS EXCESS OF PRIMARY*

**ITEM 5 - BASIS OF ACCEPTANCE**
☐ EXCESS OF LOSS          ☒ CONTRIBUTING EXCESS          ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**
*$3,520.00 NET*

**ITEM 7 - CANCELLATION NOTICE**
*90 DAYS*

CONSTITUTION REINSURANCE CORPORATION

BY
AUTHORIZED SIGNATURE
*VICE PRESIDENT*

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A.    The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto, and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

B.    Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

C.    In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

D.    As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

E.    All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employees) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

F.    Definitions
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS   The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS   The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT   The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS   Shall consist of those parts or portions of the Company's investigative claim file which in the Judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

G.    The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

H:    The Company shall be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

I.    In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

J.    The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

K.    Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

L.    The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

𝕴𝖓 𝖂𝖎𝖙𝖓𝖊𝖘𝖘 𝖂𝖍𝖊𝖗𝖊𝖔𝖋, CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_James J. Chai_                                    _David Annans_
Secretary                                                        President

# EXHIBIT T



# CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS



**66799**
CERTIFICATE NUMBER

*INTERNATIONAL SURPLUS LINES INSURANCE COMPANY*

| NAME OF INSURED | COMPANY POLICY NUMBER | |
|---|---|---|
| *ROCKWELL INTERNATIONAL CORPORATION* | *XSI 5515* | |
| **CITY** | **STATE** | **ZIP** |
| *PITTSBURGH* | *PENNSYLVANIA* | *15219* |

| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|
| *04/01/79* \| *04/01/80* | *04/01/79 TO 04/01/80* | |

| REPLACES CERTIFICATE NO. | *65680* |
|---|---|

**ITEM 1 - TYPE OF INSURANCE**

*EXCESS UMBRELLA LIABILITY*

**ITEM 2 - POLICY LIMITS & APPLICATION**

*$18,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $40,000,000 EXCESS OF $60,000,000 WHICH IN TURN IS EXCESS OF PRIMARY*

**ITEM 3 - COMPANY RETENTION**

*$16,000,000 SUBJECT TO FACULTATIVE REINSURANCE*

**ITEM 4 - REINSURANCE ACCEPTED**

*$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $18,000,000 PART OF $40,000,000 WHICH IS EXCESS OF $60,000,000 WHICH IN TURN IS EXCESS OF PRIMARY*

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS          ☒ CONTRIBUTING EXCESS          ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

*$3,200.00 NET*

**ITEM 7 - CANCELLATION NOTICE**

*90 DAYS*

CONSTITUTION REINSURANCE CORPORATION

BY _____
VICE PRESIDENT
AUTHORIZED SIGNATURES

GUY CARPENTER & COMPANY, Inc.
MIDWEST DEPARTMENT
**REINSURANCE**
100 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A.  The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both-dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

B.  Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

C.  In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

D.  As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

E.  All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

F.  Definitions
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS  The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS  The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT  The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS  Shall consist of those parts or portions of the Company's investigative claim file which in the Judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

G.  The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

H.  The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

I.  In the event of the insolvency of the Company, the reinsurance provided by his Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or to its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

J.  The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

K.  Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

L.  The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary

_____ President

ENDORSEMENT                    NO.  1

FOR ATTACHMENT TO CERTIFICATE NO. __66799__ BETWEEN _A/C: ROCKWELL INTERNATIONAL_
_CORPORATION__ _R/I: INTERNATIONAL SURPLUS LINES INSURANCE COMPANY #XSI 5515_ and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT___APRIL 1, 1979__

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS.

IT IS UNDERSTOOD AND AGREED THAT:

☒ ITEM 1 - TYPE OF INSURANCE                      ☐ AUDIT
☐ ITEM 2 - POLICY LIMITS AND APPLICATION          ☐ INCEPTION DATE
☐ ITEM 3 - COMPANY RETENTION                      ☐ EXPIRATION DATE
☐ ITEM 4 - REINSURANCE ACCEPTED                   ☐ NAME OF INSURED
☐ ITEM 5 - BASIS OF ACCEPTANCE                    ☐ ENDORSEMENT NUMBER
☐ ITEM 6 - PREMIUM                                ☐ CANCELLED
☐ ITEM 7 - CANCELLATION NOTICE

☒ SHALL BE AMENDED TO READ AS FOLLOWS:

EXCESS INSURANCE

*Phil Re*
*cert missing*
*# 78-299*

GUY CARPENTER & COMPANY, Inc.
MIDWEST DEPARTMENT
REINSURANCE
100 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

| ADDITIONAL PREMIUM | RETURN PREMIUM | CEDING COMMISSION |
|---|---|---|
| - - - | - - - | - - - |

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_Secretary_                          _President_

COUNTERSIGNED AT NEW YORK, NEW YORK THIS      12th      DAY OF      JULY      , 19. 79
CONSTITUTION REINSURANCE CORPORATION

_Thomas S. Devine_

FM 16.0.112 (4-78)

COMPANY COPY

# EXHIBIT U

ENDORSEMENT                    NO.   1

FOR ATTACHMENT TO CERTIFICATE NO. 68015     BETWEEN A/C: ROCKWELL INTERNATIONAL CORPORATION
R/I:  INTERNATIONAL SURPLUS LINES INSURANCE COMPANY #XSI 6804                          and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT  APRIL 1, 1980

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS.
IT IS UNDERSTOOD AND AGREED THAT:

- [X] ITEM 1 - TYPE OF INSURANCE
- [ ] ITEM 2 - POLICY LIMITS AND APPLICATION
- [ ] ITEM 3 - COMPANY RETENTION
- [ ] ITEM 4 - REINSURANCE ACCEPTED
- [ ] ITEM 5 - BASIS OF ACCEPTANCE
- [ ] ITEM 6 - PREMIUM
- [ ] ITEM 7 - CANCELLATION NOTICE

- [ ] AUDIT
- [ ] INCEPTION DATE
- [ ] EXPIRATION DATE
- [ ] NAME OF INSURED
- [ ] ENDORSEMENT NUMBER
- [ ] CANCELLED

[X] SHALL BE AMENDED TO READ AS FOLLOWS:

FOLLOWING FORM EXCESS GENERAL LIABILITY, AUTOMOBILE LIABILITY, WORKERS
COMPENSATION, AND EMPLOYERS LIABILITY

GUY CARPENTER & COMPANY, Inc.
MIDWEST DEPARTMENT
REINSURANCE
100 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

| ADDITIONAL PREMIUM | RETURN PREMIUM | CEDING COMMISSION |
|---|---|---|
| -- | -- | -- |

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

𝕴𝖓 𝖂𝖎𝖙𝖓𝖊𝖘𝖘 𝖂𝖍𝖊𝖗𝖊𝖔𝖋, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                        President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS  22nd     DAY OF  OCTOBER     , 19  80
                                    CONSTITUTION REINSURANCE CORPORATION

FM 16.0.112 (4-78)

COMPANY COPY

ENDORSEMENT                    NO. 2

FOR ATTACHMENT TO CERTIFICATE NO. __6801·5__ BETWEEN A/C: ROCKWELL INTERNATIONAL CORPORATION
R/I: INTERNATIONAL SURPLUSS LINES INSURANCE COMPANY # XSI 6804 _____ and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT __OCTOBER 1, 1980__

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS.

IT IS UNDERSTOOD AND AGREED THAT:

☐ ITEM 1 - TYPE OF INSURANCE                  ☐ AUDIT
☐ ITEM 2 - POLICY LIMITS AND APPLICATION      ☐ INCEPTION DATE
☐ ITEM 3 - COMPANY RETENTION                  ☐ EXPIRATION DATE
☐ ITEM 4 - REINSURANCE ACCEPTED               ☐ NAME OF INSURED
☐ ITEM 5 - BASIS OF ACCEPTANCE                ☐ ENDORSEMENT NUMBER
☐ ITEM 6 - PREMIUM                            ☒ CANCELLED
☐ ITEM 7 - CANCELLATION NOTICE

☐ SHALL BE AMENDED TO READ AS FOLLOWS:


EFFECTIVE:  OCTOBER 1, 1980



GUY CARPENTER & COMPANY, Inc.
MIDWEST DEPARTMENT
**REINSURANCE**
100 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

| ADDITIONAL PREMIUM | RETURN PREMIUM | CEDING COMMISSION |
|---|---|---|
| --- | $ 1,546.90 NET | --- |

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_____                          _____
Secretary                                  President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS........10th.............. DAY OF...NOVEMBER............, 19.80......

CONSTITUTION REINSURANCE CORPORATION

Thomas F. Devine

FM 16.0.112 (4-78)

COMPANY COPY

# EXHIBIT V

# CONSTITUTION REINSURANCE CORPORATION
### 110 WILLIAM STREE  I  NEW YORK, N.Y. 10038



66114
CERTIFICATE NUMBER

CEDING COMPANY AND ADDRESS

*INTERNATIONAL SURPLUS LINES INSURANCE COMPANY*

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| *SHELL OIL COMPANY* | *XSI 4910* | | |
| CITY | | STATE | ZIP |
| *HOUSTON* | *TEXAS* | | *77001* |

| REINSURANCE POLICY PERIOD | | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|---|
| *08/22/78* | *07/01/79* | *08/11/78 TO 07/01/79* | |

**REPLACES CERTIFICATE NO.**

**ITEM 1 - TYPE OF INSURANCE**

*EXCESS UMBRELLA LIABILITY*

**ITEM 2 - POLICY LIMITS & APPLICATION**

*$5,275,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $50,000,000 EXCESS OF $105,000,000 WHICH IN TURN IS EXCESS OF UNDERLYING INSURANCE*

**ITEM 3 - COMPANY RETENTION**

*$4,275,000 SUBJECT TO FACULTATIVE REINSURANCE*

**ITEM 4 - REINSURANCE ACCEPTED**

*$1,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE PART OF $5,275,000 PART OF $50,000,000 WHICH IS EXCESS OF $105,000,000 WHICH IN TURN IS EXCESS OF UNDERLYING INSURANCE*

**ITEM 5 - BASIS OF ACCEPTANCE**

| ☐ EXCESS OF LOSS | ☒ CONTRIBUTING EXCESS | ☐ NON-CONCURRENT |
|---|---|---|

**ITEM 6 - PREMIUM**

*$1,662.38 NET*

**ITEM 7 - CANCELLATION NOTICE**
*75 DAYS*

CONSTITUTION REINSURANCE CORPORATION

BY

AUTHORIZED SIGNATURE

*VICE PRESIDENT*

FM 18.0.93 (1-77)

# CERTIFICATE OF REINSURANCE

CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A.    The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 A.M. as to both-dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

B.    Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claims or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

C.    In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

D.    As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has created a loss reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

E.    All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and its proportion of court costs and interest on any judgment award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

F.    Definitions
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS    The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS    The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT    The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS    Shall consist of those parts or portions of the Company's investigative claim file which in the Judgement of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

G.    The Reinsurer shall be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

H.    The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

I.    In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

J.    The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

K.    Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

L.    The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer

_Secretary_

_President_

## NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY – REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.***

I.  It is agreed that the policy does not apply under any liability coverage,

to {*injury, sickness, disease, death or destruction* / bodily injury or property damage} with respect to which an insured under the policy is also

an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II.  Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III.  The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Limited Exclusion Provision set out above; provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.***

It is agreed that the policy does not apply:

I.  Under any Liability Coverage, to {*injury, sickness, disease, death or destruction* / bodily injury or property damage}

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating

to {*immediate medical or surgical relief,* / first aid,} to expenses incurred with respect

to {*bodily injury, sickness, disease or death* / bodily injury} resulting from the hazardous properties of nuclear material

and arising out of the operation of a nuclear facility by any person or organization.

- 1 -

III. Under any Liability Coverage, to $\begin{cases} \textit{injury, sickness, disease, death or destruction} \\ \text{bodily injury or property damage} \end{cases}$ resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c) the $\begin{cases} \textit{injury, sickness, disease, death or destruction} \\ \text{bodily injury or property damage} \end{cases}$ arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to $\begin{cases} \textit{injury to or destruction of property at such nuclear facility.} \\ \text{property damage to such nuclear facility and any property thereat.} \end{cases}$

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

$\begin{cases} \textit{With respect to injury to or destruction of property, the word "injury" or "destruction"} \\ \text{"property damage" includes all forms of radioactive contamination of property.} \\ \textit{includes all forms of radioactive contamination of property.} \end{cases}$

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

    (i) Garage and Automobile Policies issued by the Company on New York risks, or

    (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts, until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

---

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

ENDORSEMENT                    NO. 1

FOR ATTACHMENT TO CERTIFICATE NO.  66114   BETWEEN A/C:  SHELL OIL COMPANY
R/I:  INTERNATIONAL SURPLUS LINES INSURANCE COMPANY   #XSI 4910   and
CONSTITUTION REINSURANCE CORPORATION, EFFECTIVE DATE OF THIS ENDORSEMENT  AUGUST 22, 1979

FROM, 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

FOR AND IN CONSIDERATION OF A NET ADDITIONAL PREMIUM OF $58.18, IT IS
UNDERSTOOD AND AGREED THAT THE FOLLOWING ITEMS SHALL BE AMENDED TO
READ AS FOLLOWS:

REINSURANCE POLICY PERIOD

AUGUST 11, 1978 TO JULY 1, 1979

ITEM 6 - PREMIUM

$1,720.56 NET

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_____                    _____
Secretary                                  President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS   2nd   DAY OF ..... MAY   , 19  79

CONSTITUTION REINSURANCE CORPORATION

Thomas D. Devine

COMPANY COPY

# EXHIBIT W

# CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET ● NEW YORK, N.Y. 10038



CERTIFICATE NUMBER

61647

CEDING COMPANY AND ADDRESS

The North River Insurance Company

| NAME OF INSURED | | | RENEWAL CERTIFICATE NUMBER | |
|---|---|---|---|---|
| Warner Lambert Company | | | | |
| CITY | STATE | ZIP | REPLACES CERTIFICATE NUMBER | |
| Morris Plains | New Jersey | | | |
| COMPANY POLICY NUMBER | COMPANY POLICY PERIOD | | REINSURANCE POLICY PERIOD | |
| XS 2690 | 1-1-74 to 1-1-77 | | 1-1-74 to 1-1-77 | |

**ITEM 1— TYPE OF INSURANCE**

Excess Umbrella Liability

**ITEM 2— POLICY LIMITS & APPLICATION**

$1,500,000 each occurrence and in the aggregate where applicable part of
$8,500,000 excess of $40,000,000

**ITEM 3— COMPANY RETENTION**

$1,000,000 subject to facultative reinsurance

**ITEM 4— REINSURANCE ACCEPTED**

$500,000 each occurrence and in the aggregate where applicable part of
$1,500,000 part of $8,500,000 excess of $40,000,000

**ITEM 5— BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS          ☒ CONTRIBUTING EXCESS          ☐ NON–CONCURRENT

THE PREMIUM FOR THIS REINSURANCE SHALL BE   $9,720.00 less 25% ceding commission.

CONSTITUTION REINSURANCE CORPORATION

BY _____
                    AUTHORIZED SIGNATURE

COMPANY COPY       Assistant Vice President

### CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

## REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the "Company") in respect of the Company's policy(ies) as follows:

A.   The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this certificate of reinsurance. The Company shall make available for inspection, at any place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this certificate of reinsurance or claims in connection therewith.

B.   In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this agreement.

C.   The Company shall notify the Reinsurer promptly of any occurrence which in the Company's estimate of the value of injuries or damages sought, without regard to liability, might result in judgement in an amount sufficient to involve this certificate of reinsurance. The Company shall also notify the Reinsurer promptly of any occurrence in respect of which the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention specified in Item 3 of the Declarations, or, if this reinsurance applies on a contributing excess basis, when notice of claim is received by the Company. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this certificate of reinsurance.

D.   All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this certificate of reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and settlement of claims or suits and its proportion of court costs and interest on any judgement or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the declarations in the first layer of participation.

E.   Definitions

As used in this Certificate the following terms shall have the meaning set opposite each:

Excess of Loss   The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations, applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

Contributing Excess   The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

Non-Concurrent   The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and the limits of liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

F.   The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

G.   The Company will be liable for all taxes on premiums ceded to the Reinsurer under this certificate of reinsurance.

H.   In the event of the insolvency of the Company, the reinsurance provided by this certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

I.   The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this certificate of reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding company.

J.   Should the Company's policy be cancelled this certificate shall terminate automatically at the same time and date. This certificate may also be cancelled by the company or by the reinsurer upon not less than thirty days prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the company's calculation in the use of short rate or pro rata tables.

K.   The terms of this certificate of reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this certificate of reinsurance to be signed by its President and Secretary at New York, New York, but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____
Secretary

_____
President

ENDORSEMENT                    NO... 1......

FOR ATTACHMENT TO CERTIFICATE NO.  61647      BETWEEN  A/C: WARNER LAMBERT COMPANY
. R/I: THE NORTH RIVER INSURANCE COMPANY  # XS 26??                              and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT    DECEMBER 31, 1975

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

JUN  2 1976

FOR AND IN CONSIDERATION OF A RETURN PREMIUM OF
$3,248.88 LESS 25% CEDING COMMISSION IT IS UNDERSTOOD
AND AGREED THAT THE CERTIFICATE OF WHICH THIS
ENDORSEMENT FORMS A PART OF SHALL BE CANCELLED
EFFECTIVE DECEMBER 31, 1975.

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                            President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS .. . 26th  .. DAY OF   MAY .  . , 19.76 ...

CONSTITUTION REINSURANCE CORPORATION

BROKER COPY.

# EXHIBIT X

# CONSTITUTION REINSURANCE CORPORATION
### 110 WILLIAM STREET ● NEW YORK, N.Y. 10038

CEDING COMPANY AND ADDRESS

**62997**
CERTIFICATE NUMBER



### THE NORTH RIVER INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| WARNER LAMBERT COMPANY | XS 4052 | | |
| CITY | STATE | | ZIP |
| MORRIS PLAINS | NEW JERSEY | | 07950 |

| REINSURANCE POLICY PERIOD | | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|---|
| 12/31/75 | 12/31/78 | 12/31/75 TO 12/31/78 | |

**REPLACES CERTIFICATE NO.**

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE PART OF $15,000,000 EXCESS OF $5,000,000 WHICH
IN TURN IS EXCESS OF UNDERLYING INSURANCE

**ITEM 3 - COMPANY RETENTION**

$1,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$1,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE PART OF $2,000,000 PART OF $15,000,000 WHICH IS
EXCESS OF $5,000,000 WHICH IN TURN IS EXCESS OF UNDERLYING
INSURANCE

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$117,304.00 NET.

**ITEM 7 - CANCELLATION NOTICE**

75 DAYS

CONSTITUTION REINSURANCE CORPORATION

BY

AUTHORIZED SIGNATURE
VICE PRESIDENT

FM 16 0.93 (6-75)

COMPANY COPY

ENDORSEMENT                              NO....1.....

FOR ATTACHMENT TO CERTIFICATE NO. ....62997....... BETWEEN .....A/C: WARNER LAMBERT COMPANY
R/I: NORTH RIVER INSURANCE COMPANY..........# XS 4052...................... and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT ....DECEMBER 31, 1975

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS UNDERSTOOD AND
AGREED THAT ITEMS 2 AND 4 ARE AMENDED TO READ AS FOLLOWS:

ITEM 2 - POLICY LIMITS
$2,250,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE PART OF $15,000,000 IN EXCESS OF $5,000,000
WHICH IN TURN IS IN EXCESS OF UNDERLYING

ITEM 4 - REINSURANCE ACCEPTED
$1,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE PART OF $2,250,000 PART OF $15,000,000 IN EXCESS
OF $5,000,000 WHICH IN TURN IS IN EXCESS OF UNDERLYING

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

                    Secretary                                    President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ......28TH...... DAY OF ...JANUARY..., 19 76
                              CONSTITUTION REINSURANCE CORPORATION

COMPANY COPY

# NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY – REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I. It is agreed that the policy does not apply under any liability coverage, to {*injury, sickness, disease, death or destruction* / bodily injury or property damage} with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

    (a) become effective on or after 1st May, 1960, or

    (b) become effective before that date and contain the Limited Exclusion Provision set out above; provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company (new, renewal and replacement) affording the following coverages:

    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to {*injury, sickness, disease, death or destruction* / bodily injury or property damage}

    (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to {*immediate medical or surgical relief,* / first aid,} to expenses incurred with respect to {*bodily injury, sickness, disease or death* / bodily injury} resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

– 1 –



CONSTITUTION REINSURANCE CORPORATION
CERTIFICATE OF REINSURANCE

**CONSTITUTION REINSURANCE CORPORATION**
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

**REINSURING AGREEMENTS AND CONDITIONS**

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth hereinafter and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A.    The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance in connection therewith.

B.    In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor have any rights under this Certificate of Reinsurance.

C.    The Company shall notify the Reinsurer promptly of any occurrence which in the Company's estimate of the value of injuries or damages sought, without regard to liability, might result in judgment in an amount sufficient to involve this Certificate of Reinsurance. The Company shall also notify the Reinsurer promptly of any occurrence in respect of which the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention specified in Item 3 of the Declaration, or, if this reinsurance applies on a contributing excess basis, when notice of claim is received by the Company. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

D.    All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employee) incurred by the Company in the investigation and settlement of claims or suits and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, (if there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

E.    Definitions

As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS    The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS    The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionately to the loss settlements in the percentage set forth in Item 4 of the Declarations.

NON-CONCURRENT    The reinsurance provided does not apply to any hazards of risks of loss or damage covered under the Company other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined by the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

F.    The Reinsurer will be paid or credited by the Company with its proportion of the premiums due under this Certificate as made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied first to reduce the loss and then to reduce the reinsurance.

G.    The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

H.    In the event of the insolvency of the Company, the reinsurance provided by this Certificate be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense which it may deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

I.    Should the Company pay or receive any payment on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether arising as insurance or reinsurance, the company.

J.    Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for nonpayment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate, Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

K.    The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York, but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_Secretary_                                                                                        CONSTITUTION REINSURANCE CORPORATION

                                                                                                        _President_

# EXHIBIT Y

# CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET ● NEW YORK, N.Y. 10038



62998
CERTIFICATE NUMBER

CEDING COMPANY AND ADDRESS

THE NORTH RIVER INSURANCE COMPANY

| NAME OF INSURED | COMPANY POLICY NUMBER | |
|---|---|---|
| WARNER LAMBERT COMPANY | DCL 00 13 50 | |

| CITY | STATE | ZIP |
|---|---|---|
| MORRIS PLAINS | NEW JERSEY | 07950 |

| REINSURANCE POLICY PERIOD | | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. |
|---|---|---|---|
| 12/31/75 | 12/31/78 | 12/31/75 TO 12/31/78 | |

**REPLACES CERTIFICATE NO.**

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$4,500,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE PART OF $5,000,000 EXCESS OF UNDERLYING INSURANCE

**ITEM 3 - COMPANY RETENTION**

$3,500,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$1,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE PART OF $4,500,000 PART OF $5,000,000 WHICH IS
EXCESS OF UNDERLYING INSURANCE

**ITEM 5 - BASIS OF ACCEPTANCE**

☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT

**ITEM 6 - PREMIUM**

$296,000.00 DEPOSIT, $320,000.00 MINIMUM ADJUSTABLE ANNUALLY
AT RATE ON FILE WITH NORTH RIVER.

**ITEM 7 - CANCELLATION NOTICE**
75 DAYS

CONSTITUTION REINSURANCE CORPORATION

BY

AUTHORIZED SIGNATURE

VICE PRESIDENT

## CERTIFICATE OF REINSURANCE

### CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations therein called the Company in respect of the Company's policy(ies) as follows:

**A.** The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 3 of the Declarations, unless otherwise credited to the Reinsurer. The liability of the Reinsurer, as specified in Item 3 of the Declarations, will follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except where otherwise specifically provided herein or designated as non-concurrent ...

**B.** ... rights under this Certificate of Reinsurance

**C.** The Company shall notify the Reinsurer promptly of any occurrence which in its own knowledge estimate or the value of injuries or damages sought, involves or may involve this Certificate of Reinsurance. The Company shall also notify the Reinsurer of any suit or action ... the Reinsurer may at its own election and at its own expense join with the Company in the defense of such claim or suit ...

**D.** ... The Company shall pay to the Reinsurer, provided they is either the primary ... if the original policy ... and within the terms and conditions of the Company's ... the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only on the percentage stated in Item 4 of the Declarations in the first layer of participation.

**E.** **Definitions**

As used in this Certificate the following terms shall have the meaning set opposite each.

**EXCESS OF LOSS** The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted expressly) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations

**CONTRIBUTING EXCESS** The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

**NON-CONCURRENT** The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall then applied to the hazards or risks of loss or damage specifically described in this Declarations.

**F.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches...

**G.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance.

**H.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of the insolvency, directly to the Company or to its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer...

**I.** The Reinsurer may offset any balance(s) whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from and payable to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding company.

**J.** Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 2 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

**K.** The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York, but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_James J. Shea_                                              _Jack Simmons_
Secretary                                                       President

## NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY – REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.\***

I. It is agreed that the policy does not apply under any liability coverage,

to {*injury, sickness, disease, death or destruction* / bodily injury or property damage} with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Limited Exclusion Provision set out above; provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.\***

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to {*injury, sickness, disease, death or destruction* / bodily injury or property damage}

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating

to {*immediate medical or surgical relief,* / first aid,} to expenses incurred with respect

to {*bodily injury, sickness, disease or death* / bodily injury} resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

- 1 -

ENDORSEMENT                    NO. 1 . . . . . .

FOR ATTACHMENT TO CERTIFICATE NO.  62998      BETWEEN A/C: WARNER LAMBERT COMPANY
R/I: NORTH RIVER INSURANCE COMPANY —# DCL 00 13 50
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT  DECEMBER 31, 1975

FROM, 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

FOR VALUE RECEIVED, IT IS UNDERSTOOD AND AGREED THAT THE
FOLLOWING ITEMS SHALL BE AMENDED TO READ AS FOLLOWS:

ITEM 2 – POLICY LIMITS AND APPLICATION

$5,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE EXCESS OF PRIMARY

ITEM 3 – COMPANY RETENTION

$4,000,000 SUBJECT TO FACULTATIVE REINSURANCE

ITEM 4 – REINSURANCE ACCEPTED

$1,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE
APPLICABLE PART OF $5,000,000 IN EXCESS OF PRIMARY

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                          President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS      20th       DAY OF    DECEMBER   , 19 77

CONSTITUTION REINSURANCE CORPORATION

COMPANY COPY.

ENDORSEMENT          NO.  2

FOR ATTACHMENT TO CERTIFICATE NO.  62988      BETWEEN A/C:  WARNER LAMBERT COMPANY
R/I:  NORTH RIVER INSURANCE COMPANY   #DCL 001350
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT  DECEMBER 31, 1978  and

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS.

IT IS UNDERSTOOD AND AGREED THAT:

☐ ITEM 1 - TYPE OF INSURANCE
☐ ITEM 2 - POLICY LIMITS AND APPLICATION
☐ ITEM 3 - COMPANY RETENTION
☐ ITEM 4 - REINSURANCE ACCEPTED
☐ ITEM 5 - BASIS OF ACCEPTANCE
☐ ITEM 6 - PREMIUM
☐ ITEM 7 - CANCELLATION NOTICE

☐ AUDIT
☐ INCEPTION DATE
☒ EXPIRATION DATE
☐ NAME OF INSURED
☐ ENDORSEMENT NUMBER
☐ CANCELLED

☒ SHALL BE ~~AMENDED TO READ AS FOLLOWS~~ EXTENDED TO EXPIRE ON:


JANUARY 1, 1979

| ADDITIONAL PREMIUM | RETURN PREMIUM | CEDING COMMISSION |
|---|---|---|
| $270.40 NET | --- | --- |

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                      President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS      8th      DAY OF  NOVEMBER  , 19 78
CONSTITUTION REINSURANCE CORPORATION

Thomas G. Devine

FM 16.0.112 (4-78)                    COMPANY COPY

ENDORSEMENT          NO.   3

FOR ATTACHMENT TO CERTIFICATE NO. __62998__ BETWEEN A/C: _WARNER LAMBERT COMPANY__
R/I: _THE NORTH RIVER INSURANCE COMPANY____ #DCL 001350_____ and
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT __JANUARY 1, 1979__

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS.
IT IS UNDERSTOOD AND AGREED THAT:

| | | | |
|---|---|---|---|
| ☐ ITEM 1 - TYPE OF INSURANCE | | ☒ AUDIT |
| ☐ ITEM 2 - POLICY LIMITS AND APPLICATION | | ☐ INCEPTION DATE |
| ☐ ITEM 3 - COMPANY RETENTION | | ☐ EXPIRATION DATE |
| ☐ ITEM 4 - REINSURANCE ACCEPTED | | ☐ NAME OF INSURED |
| ☐ ITEM 5 - BASIS OF ACCEPTANCE | | ☐ ENDORSEMENT NUMBER |
| ☐ ITEM 6 - PREMIUM | | ☐ CANCELLED |
| ☐ ITEM 7 - CANCELLATION NOTICE | | |

☐ SHALL BE AMENDED TO READ AS FOLLOWS:

CHARGED FOR THE PERIOD OF DECEMBER 31, 1978 TO JANUARY 1, 1979 HAS BEEN
COMPLETED.

| ADDITIONAL PREMIUM | RETURN PREMIUM | CEDING COMMISSION |
|---|---|---|
| $24,000.00 NET | - - - | - - - |

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

**In Witness Whereof,** THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

Secretary                                    President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS        24th        DAY OF      JULY      , 19  79.

CONSTITUTION REINSURANCE CORPORATION

FM 16.0.112 (4-78)

COMPANY COPY